Matthias, J.
 

 The question of law presented to this court is whether the order of the commission, that the lithographed paper sheets do not come within the classification of “paper, enameled, glazed or surface coated,” and, therefore, are not transportable at a lower rate than that imposed, is unreasonable or unlawful.
 

 The record contains much evidence descriptive of these lithographed sheets. Briefly stated, these sheets of paper are 44 inches by 64 inches; the paper is of varying weights, some sheets being coated on one side and others coated on both sides.
 

 ■ The appellant purchases the paper from the manufacturer and has it delivered to the Copyfier Lithographing Corporation in Cleveland, which company operates a large printing plant and does work for many customers including The Saalfield Publishing Company. When the large sheets of paper come to the Copyfier company they are entirely white or blank. The Copyfier company places pictures, designs, illustrations, impressions, and in some instances words and phrasing on these sheets of paper by means of offset
 
 *116
 
 printing or lithographing. The pictures which are in colors are designed for use in children’s books, such as bible picture-books, and, therefore, processing and binding are necessary. That is done at the appellant’s plant in Akron. It is to be observed that the sheets of paper remain full size, just as received by Copyfier, and, following the lithographing process by Copyfier, are securely fastened to skids. These skids are loaded by Copyfier directly onto the trucks of the carriers, at Cleveland, and unloaded from the trucks by the appellant upon their arrival at its plant in Akron. When received by the appellant these printed or lithographed sheets of paper are cut, trimmed to size and assembled into finished books.
 

 The record discloses that the individual tariffs of the carriers contain no rate for paper, enameled, glazed or surface-coated, but by reference to their tariffs, and on their bills of lading, material not classified in their tariffs was subject to the rates set forth in what is known as the “Jackson Tariff.”
 

 The legal question presented here involves the interpretation of the language contained in that tariff, particularly the following description listed therein under the heading of “Paper”:
 

 “Item Articles ' ' Ratings
 

 “13 Enameled, glazed or surface coated,
 

 N.O.I., see note 5 below, in packages:
 

 “14 Printed, see note 6 below............;. .3
 

 Vol., min. wt. 36,000 lbs.............5-5-45
 

 “15 Not printed ..........................3-4- 3
 

 Vol., min. wt. 36,000 lbs.............5-6- 5
 

 # # * * *
 

 “Note 5 — Ratings will not apply on printed advertising or reading matter.
 

 “Note 6 — Ratings will not apply on paper backed foil.” (N.O.I., not otherwise indexed.)
 

 
 *117
 
 It was contended, and the commission found, that the commodity transported is “paper, enameled, glazed-1 or surface coated, printed,” but that by reason of' the lithographing thereon it becomes “reading matter.” Upon finding there is no specific rate for “reading matter,” the commission applied the general classification applicable to “printed matter,” with-•the higher rate.
 

 By the exception stated in note 5,
 
 supra,
 
 both “printed advertising” and “reading matter” are specifically excluded from the classification, “paper,, enameled, glazed or surface coated.” Both the appellant and the commission concede that the commodity involved in the controversy is not “printed advertising.” The narrow question presented here, therefore, is whether such large sheets are “reading mat-' ter.” The appellant contends that such sheets of' paper, some with, and others without, any printed' words thereon,'constitute only “paper, surface coated, printed,” and do not come within the definition of “reading matter.” It is contended that not only are-there printed legends on the sheets but also pictures-designed to convey impressions and information, and; that, therefore, the sheets of paper should be designated as “reading matter.” Hence it became necessary for the commission, in arriving at its conclusion, to-determine the meaning of the words “reading matter.” In so doing the commission yas not deciding a question-of fact. The facts are undisputed. There never has-been any controversy as to the character of the material shipped. Tariff rates are established by authority of law, and the application of the proper tariff rate-to a commodity, where the facts are undisputed, presents a question of law. In 9 American Jurisprudence, 526, Section 144, it is stated as follows:
 

 “The construction to be given to a carrier’s tariff'* schedules or to the provisions of special contracts re
 
 *118
 
 lating to rates, and the 'application thereof, present, •ordinarily, questions of law which do not differ in character from those presented when the construction .and application of the provisions of any other document are in dispute. The meaning and effect of particular provisions are to be ascertained from the words employed and the connection in which they are used, the subject matter, and the evident purpose of such provisions.”
 

 See, also,
 
 Great Northern Ry. Co.
 
 v.
 
 Merchants Elevator Co.,
 
 259 U. S., 285, 291, 66 L. Ed., 943, 42 S. Ct., 477.
 

 The rule is well established that where more than •one rate classification is applicable to a commodity, the tariff which applies to the materials specifically ■described will control, to the exclusion of the general tariff rate applicable to a large class of similar commodities. If, therefore, such commodity comes within the rate classification of articles enumerated in item 13, above set forth, that rate is applicable to the exclusion of the higher rate established for “printed matter. ” It is obvious that a fair construction of item 13 does not exclude from it all
 
 printed
 
 sheets of paper; only two classes are excluded from such rate •schedule, and those are “printed advertising” and “reading matter.” Paper printed only with designs or pictures, such as Christmas papers, would clearly be included in the classification set forth in item 13 •of the schedule of rates. ,
 

 The most appropriate definition of “reading” matter is that found in Webster’s New International Dictionary (2 Ed.): “Written or printed matter intended to be read.”
 

 To hold that large sheets of paper (44 inches by 64 inches), of the kind described above, are reading matter would require a strained construction of the term .as thus defined and as commonly understood, and
 
 *119
 
 since note 5 in the tariff is an exception thereto it must be strictly construed and limited to those commodities which clearly and directly fall within the definition of “reading matter.”
 

 The rule is well established that “where two descriptions and tariffs are equally appropriate, the shipper is entitled to have applied the one specifying the lower rates.”
 
 United States
 
 v.
 
 Gulf Refining Co.,.
 
 268 U. S., 542, 69 L. Ed., 1082, 45 S. Ct., 597.
 

 It is stated in 9 American Jurisprudence, 526, Section 144, that “where the meaning [of provisions of a tariff schedule] is doubtful, such provisions are to be construed in favor of the shipper or patron. * * * If a commodity shipped is included in more than one tariff designation, that which is more specific will be held applicable.”
 

 The commodity involved in this controversy could have fallen either under this special classification of “paper, enameled, glazed or surface coated,” or under the general classification of “printed matter,” under the well settled rule that the rate to be applied is the lower one, which, in this instance, is the first rate classification above stated. As the term, “reading matter,” is usually accepted and understood, these large sheets of paper were not “reading matter” when shipped. They became such only through processing by the appellant.
 

 It is argued that the printing on these sheets of paper increased their value, and that, therefore, it would be unjust to require'the carriers to transport them at the same rate charged for paper before there is any printing thereon. It is suggested that rates are usually based upon the value of the commodity, and, therefore, these sheets of paper, with these pictures or designs placed thereon, should be accorded a higher rate. However, that is not a matter to be submitted to this court. An intermediate rate possibly would
 
 *120
 
 be justified. It can be established, however, only upon the initiative of the carriers and by the approval of the •commission. It is not a question for the court’s con-••side ration.
 

 For the reasons indicated the order of the Public Utilities Commission is unreasonable and unlawful. •Such order is, therefore, reversed, and the case remanded for further proceedings in accord with this •opinion.
 

 Order reversed.
 

 Weygandt, C. J., Turner, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.