CHESAPEAKE AND OHIO RAILWAY COMPANY, APPELLANT, *v.* R.L. INDUSTRIES, INC., APPELLEE.

(No. C-830948 — Decided March 6, 1985.)

*Denicola & Mason* and *Ronald Denicola,* for appellant.

*E. Ronald Grossheim,* for appellee.

*Per Curiam.* Plaintiff-appellant, Chesapeake & Ohio Railway Company, filed suit against defendant, R.L. Industries, Inc., seeking payment of $2,360 that defendant had allegedly incurred by storing railway tank cars on plaintiff's track. Defendant moved for summary judgment, and the trial court granted the motion on the ground that defendant had paid the price for which it had bargained and had accordingly been billed. Plaintiff appeals, asserting as its single assignment that the trial court erred in granting summary judgment in defendant's favor. The assignment of error has merit.

Defendant had originally contacted plaintiff to obtain a price quote on storing two privately owned tank cars on plaintiff's railroad track while defendant lined them with fiberglass for one of its customers. Plaintiff quoted defendant the price of ten dollars per day for each car. Based in part on plaintiff's quotation, defendant then submitted a bid to its customer. The bid was accepted and defendant did the work, stationing the cars on plaintiff's siding for a joint total of one hundred twenty-four days. Plaintiff subsequently billed defendant for $1,240. Defendant paid the bill in full.

Plaintiff later audited the bill and found that defendant had been quoted and charged the wrong price. The rates for storing privately owned railway cars are set forth in Freight Tariff PHJ 6004-M. Plaintiff's ten dollar per day figure had been derived from ITEM 1925. Plaintiff contends that the cost was properly governed by ITEM 2005, pertaining to railway cars that move on their own wheels and are stored in excess of forty-eight hours.[1] The proper charge would therefore have been thirty dollars per day for each car after the expiration of forty-eight hours of free storage. Plaintiff accordingly asserts an undercharge of $2,360.[2]

Pursuant to its power to regulate interstate commerce, Congress has provided that railroads shall establish "reasonable rates, fares, charges, and classifications applicable thereto," Section 1(4), Title 49, U.S. Code, and that schedules showing the established rates shall be filed with the Interstate Commerce Commission and published in such a form that they are accessible to the public and can be conveniently inspected. Section 6(1), Title 49, U.S. Code. The railroad can only charge and can only collect the established rates. Section 6(7), Title 49, U.S. Code; *Pittsburgh, C., C. & St. Louis Ry. Co.* v. *Fink* (1919), 250 U.S. 577, 581; *Railway Express Agency* v. *Youngstown Plant & Flower Co.* (C.P. 1960), 85 Ohio Law Abs. 440, 441-442.

The reported cases that have interpreted the application of the Interstate Commerce Act have to date dealt only with shippers who have been transporting goods with railway carriers, and consignees who have been receiving those goods. We see no reason to construe the Act any differently in regard to a party

---

[1] The applicable freight tariff information was set forth in plaintiff's memorandum in opposition to defendant's motion for summary judgment as well as in plaintiff's response to defendant's interrogatories. The tariff itself is on file with the Interstate Commerce Commission and is a matter of public record.

Application of a proper rate to a particular fact situation is a question of law, when the underlying facts are undisputed. *Saalfield Publishing Co.* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 113 [36 O.O. 468], paragraph one of the syllabus. Thus the trial court, on remand, will need to determine which rate properly applies. Defendant was not entitled to judgment as a matter of law.

[2] The first two days of storage for each car are not included under ITEM 2005; thus plaintiff asserts that the proper charge is based on an aggregate total of one hundred twenty days, as follows:

| | |
|---|---|
| 120 x $30 equals | $3,600 |
| Less amount billed and paid | 1,240 |
| Balance due | $2,360 |

240

who stores a privately owned good on railway property; he is, of course, subject to the established "charges" as listed in the tariff schedules. Accordingly, defendant could have known the correct rate by looking it up in the schedules and is therefore conclusively presumed to have known that he was liable to pay the established tariff rate for stationing railway tank cars on plaintiff's track. See *Pittsburgh, supra; Railway Express Agency, supra; New York Central RR. Co.* v. *Peak* (1917), 6 Ohio App. 399, 401-402. Defendant's bargain for the improper price, based on plaintiff's misquote, is not a justifiable excuse for paying less than the established rate. *Louisville & Nashville RR. Co.* v. *Maxwell* (1915), 237 U.S. 94, 97. Similarly, defendant's reliance on the misquote (submitting a bid to its customer) will not provide relief from the Act's requirement of uniform charges by estopping plaintiff from requiring payment of that higher established rate. *Pittsburgh, supra,* at 582.

The courts have recognized that this rule (presuming knowledge of the scheduled rates) may result in individual cases of hardship, as the instant case, where the defendant has paid the price it was quoted and for which it was billed. *Pittsburgh, supra; Louisville, supra.* However, such individual instances cannot override the policy considerations that Congress has enacted by statute in order to secure conformity and avoid unjust discrimination. *Id.* Summary judgment should not have been granted in defendant's favor.

The judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

BLACK, P.J., SHANNON and KLUSMEIER, JJ., concur.