OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

    Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

    NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

    Myers, Appellant, v. Public Utilities Commission of Ohio et al., Appellees.

    [Cite as Myers v. Pub. Util. Comm. (1992),    Ohio St.3d    .]

Public Utilities Commission -- Electric companies -- Electric
    service to garage charged under general service rate, not
    residential rate, when.

    (No. 91-1044 -- Submitted June 2, 1992 -- Decided August 12, 1992.)

    Appeal from the Public Utilities Commission of Ohio, No. 90-1315-EL-CSS.

    In 1980, appellant, Joseph L. Myers, completed construction of a detached garage on his residential property in Columbus, Ohio. Appellant considered two options in establishing electrical service to the structure: (1) installing a branch circuit from his home, or (2) having intervening appellee, Columbus Southern Power Company ("CSP"), install a separate service line. Appellant elected the latter option and wired the garage to accommodate the separate service, prior to requesting installation and without inquiring as to the rate he would be charged. CSP completed installation, which consisted of a drop line and meter, on December 30, 1980.

    CSP serves it customers under two broad tariff categories, residential service and general service. Each of these categories is further divided into different classifications according to the usage characteristics of the particular class. These classifications were developed and approved by the commission in CSP's previous rate proceeding, and their corresponding rates were designed to reasonably recover the costs that each class imposes upon the utility to provide service.

    CSP has billed appellant for service to the garage under its general service tariff, Schedule GS-1, since the service was established. Appellant has complained to CSP over the years that the garage should be billed under the residential tariff and on these occasions was informed that the residential rate would be available only if the garage and house were served by the same meter.

On August 16, 1990, appellant filed a formal complaint with the Public Utilities Commission of Ohio ("commission") under R.C. 4905.26, alleging that CSP had overcharged him for electric service by placing the garage under the general service tariff. As relief, appellant requested that CSP refund the alleged overcharges for the past ten years (a total of $1,134.66) and place the garage under the residential tariff.

Upon hearing, the commission examined CSP's overall tariff structure and found that the residential service tariff is available only to "residences" (construing that term to mean "a place where one lives") and that the general service tariff is available to all other types of facilities. The commission reasoned that, because appellant's garage was not used as a residence, service was properly provided under general service rates. To support its determination, the commission considered the results of load surveys submitted by CSP which showed that electric usage for the garage did not resemble residential usage patterns, and that appellant's specific use of the garage was more akin to an auto repair shop (a welder, a one-half ton electric hoist, an electric battery recharger, and eight two-tube fluorescent lights) than a home. Thus, by order of March 7, 1991, the commission dismissed appellant's complaint. Appellant filed an application for rehearing on April 4, 1991, which the commission denied by entry issued April 25, 1991.

On May 23, 1991, appellant filed a notice of appeal with this court. On October 25, 1991, appellant filed a motion for oral argument in lieu of filing briefs. We denied that request on December 11, 1991, and now, sua sponte, waive oral argument and consider this matter on the basis of the briefs submitted.

This cause is before this court upon an appeal as of right.

Joseph L. Myers, pro se.

Lee I. Fisher, Attorney General, James B. Gainer and William L. Wright, for appellee Public Utilities Commission.

James L. Reeves and F. Mitchell Dutton, for intervening appellee Columbus Southern Power Company.

Per Curiam. Appellant raises three issues by this appeal:

(1) Is the language of CSP's tariff ambiguous, requiring appellant's separately metered garage to be billed at the residential rate?

(2) Does CSP apply its tariff in a discriminatory manner by making the residential rate available to a garage when it is served on the same meter as a house, but not when metered separately?

(3) Do the procedural due process violations alleged by appellant require reversal of the commission's order?

For the reasons which follow, we answer each question in the negative and affirm the commission's order.

I

Appellant argues that the terms of CSP's residential tariff are ambiguous and, as such, must be construed in his favor. Saalfield Publishing Co. v. Pub. Util. Comm. (1948), 149 Ohio St. 113, 119, 36 O.O. 468, 471, 77 N.E.2d 914, 917 ("'where two descriptions and tariffs are equally appropriate, the [consumer] is entitled to have applied the one specifying

the lower rates.'  United States v. Gulf Refining Co., 268 U.S., 542, 69 L.Ed., 1082, 45 S.Ct., 597.")

The availability portion of CSP's residential tariff provides that such service is "[a]vailable for residence service to consumers ***."  (Emphasis added.)  Further, Rule 4 of CSP's "Rules and Regulations for Electric Service," contained in its approved tariff, provides that "[s]chedules specified as available for residence service are not available for any other purposes ***."

In construing the tariff at issue in Saalfield, supra, we noted that "'[t]he meaning and effect of particular [tariff] provisions are to be ascertained from the words employed and the connection in which they are used, the subject matter, and the evident purpose of such provisions.'"  Id., 149 Ohio St. at 1177-118, 36 O.O. at 470, 77 N.E.2d at 916-917, quoting 9 American Jurisprudence 526, Section 144.

At issue in this proceeding is whether appellant's garage can be considered a "residence."  Webster's New Third International Dictionary (1986) 1931, defines the term as "a building used as a home."  The record clearly supports the commission's finding that appellant's garage was not used for this purpose.  Considering that the common definition of "residence" as used in CSP's tariff excludes appellant's garage, and that CSP's Rule 4 prohibits availability of the residential tariffs to non-residences, we find that the language of the tariff is not ambiguous and that the commission's construction of the tariff was reasonable.

II

Appellant next argues that it is discriminatory to charge his separately metered garage the higher general service rate when it is used for the same "residential" purposes as a garage wired through a residence.  The commission and CSP argue that billing appellant's garage under the higher general service rate is not discriminatory, because the rate is designed to recover the additional costs the garage imposes on CSP's system.

R.C. 4905.35 provides:

"No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject any person, firm, corporation, or locality to any undue or unreasonable prejudice or disadvantage."  (Emphasis added.)

In Townships of Mahoning Cty. v. Pub. Util. Comm. (1979), 58 Ohio St.2d 40, 44, 12 O.O.3d 45, 47, 388 N.E.2d 739, 742, we held:

"Absolute uniformity in rates or prices is not required by statute or case law.  A reasonable differential or inequality of rates may occur where such differential is based upon some actual or measurable differences in the furnishing of services to the consumer."

The record in this proceeding establishes that it costs CSP more to provide service to a separately metered garage than to provide service to a garage wired through a residence.  The record further establishes that the electric load of appellant's garage is consistent with general service usage, in that it imposes high peak demands over short periods of time, resulting in higher average costs to the utility.  The commission has approved CSP's residential and general service

classifications and their corresponding rates based upon such cost of service differences. These classifications and rates are presumed just and reasonable, and appellant bears the burden of establishing otherwise. AT&T Communications of Ohio, Inc. v. Pub. Util. Comm. (1990), 51 Ohio St.3d 150, 154, 555 N.E.2d 288, 292-293; Columbus v. Pub. Util. Comm. (1959), 170 Ohio St. 105, 10 O.O.2d 4, 163 N.E.2d 167, paragraph two of the syllabus; Thomas v. Pub. Util. Comm. (1986), 24 Ohio St.3d 167, 24 OBR 838, 493 N.E.2d 1328; Grossman, Midtown Tel. Answering Serv., Inc. v. Pub. Util. Comm. (1966), 5 Ohio St.2d 189, 34 O.O.2d 347, 214 N.E.2d 666. Appellant has presented no probative evidence that the rate differentials complained of are not based upon valid, cost-causation considerations and, thus, has failed to show that the general service rate charged for providing service to his garage is unduly discriminatory.

### III

Finally, appellant claims that the commission and the attorney examiner assigned to hear his case committed various due process violations. We consider these allegations under the established principle that this court will not reverse an order of the commission absent a showing of prejudice by the party seeking reversal. Cincinnati v. Pub. Util. Comm. (1949), 151 Ohio St. 353, 39 O.O. 188, 86 N.E.2d 10, paragraph six of the syllabus; Ohio Edison Co. v. Pub. Util. Comm. (1962), 173 Ohio St. 478, 20 O.O.2d 108, 184 N.E.2d 70, paragraph ten of the syllabus; Akron v. Pub. Util. Comm. (1978), 55 Ohio St.2d 155, 161, 9 O.O.3d 122, 125, 378 N.E.2d 480, 484; Holladay Corp. v. Pub. Util. Comm. (1980), 61 Ohio St.2d 335, 15 O.O.3d 426, 402 N.E.2d 1175, syllabus.

First, appellant claims that the attorney examiner assigned to the case engaged in ex parte communications in violation of R.C. 4903.081.1 Clearly, the purpose of the statute is to prevent a party from gaining an unfair advantage over an opposing party through ex parte communications with the decisionmaker. Here, appellant alleges that he discussed the merits of the case with the examiner. Appellant provides no specific support as to the matters discussed or how he was prejudiced.

Appellant next contends that, during the discussion referenced above (held October 10, 1990), the attorney examiner ordered him to refrain from filing additional motions until after a pre-hearing conference was held on October 25, 1990. The examiner allegedly indicated that she would instruct CSP to do the same. At appellant's deposition by CSP on October 11, 1990, the company served appellant with a "Motion to Compel Entry Upon Land for Purposes of Inspection." Appellant filed a "Motion to Deny Additional Inspection" on October 15, 1990. These motions were resolved at the pre-hearing conference held on October 25, 1990. Appellant provides no indication as to how these events prejudiced him in this case.

Next, appellant asserts that he was not granted ample discovery rights. Appellant's allegation stems from a discovery request served upon CSP on or about November 26, 1990, asking CSP to provide him with various documents dating to 1978, among other items. Appellant requested CSP to allow him to inspect these documents at the Columbus Metropolitan Library at 4:00 p.m. on December 3, 1990, the day before

hearing.  On November 30, 1990, CSP mailed its response to appellant, stating, inter alia, that production of the documents referred to above would be unduly burdensome, because it would likely entail an extensive record search within a short period of time (seven days; the commission's rules provide for a period of twenty days within which to respond, Ohio Adm. Code 4901-1-20[C]).  CSP further stated that the place and time of inspection were inconvenient.  Appellant did not file a motion to compel (Ohio Adm. Code 4901-1-23), did not request a continuance of the hearing scheduled for December 4, 1990, and was given an opportunity to review the documents which the company was able to have ready in that short period of time, prior to hearing.  Appellant has provided no basis, either on rehearing or appeal, as to how he was prejudiced by these events.

Finally, appellant requested in his application for rehearing that Commissioner Lenworth Smith, Jr. be removed from this case.  Appellant alleges that Commissioner Smith represented him in a divorce proceeding in 1979, and that appellant became dissatisfied with Smith's representation and discharged him.  Appellant provides no support that Commissioner Smith was biased against him.  Moreover, although Commissioner Smith was one of the three commissioners who voted to dismiss appellant's complaint in the commission's March 7, 1991 opinion and order, his term expired on April 10, 1991, prior to the commission's consideration of the case on rehearing.  Consequently, appellant's request that Smith be removed from the case became moot.  Again, appellant has failed to demonstrate prejudice.

Order affirmed.

Moyer, C.J., Sweeney, Holmes, Douglas, Wright, H. Brown and Resnick, JJ., concur.

FOOTNOTE

1    R.C. 4903.081 provides:

"After a case has been assigned a formal docket number neither a member of the public utilities commission nor any examiner associated with the case shall discuss the merits of the case with any party or intervenor to the proceeding, unless all parties and intervenors have been notified and given the opportunity of being present or a full disclosure of the communication insofar as it pertains to the subject matter of the case has been made.

"Failure of any assigned examiner of the public utilities commission or any commissioner to abide by this section may, at the discretion of the commissioners, lead to that examiner's or commissioner's removal from a particular case or appropriate disciplinary action."