OHIO CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Ohio Consumers' Counsel v. Pub. Util.
Comm.,* 121 Ohio St.3d 362, 2009-Ohio-604.]

(No. 2008–0367—Submitted November 18, 2008—Decided February 19, 2009.)

O'DONNELL, J.

## Introduction

{¶ 1} This appeal arises from Am.Sub.S.B. No. 3, 148 Ohio Laws, Part IV, 7962 ("S.B. 3"), the electric restructuring legislation passed by the General Assembly in 1999. We remanded an earlier appeal to the commission in *Ohio Consumers' Counsel v. Pub. Util. Comm.,* 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ("*CG & E Remand Opinion*") for further discovery of side agreements made in connection with a stipulation to establish a standard market-based service offer. The Office of the Ohio Consumers' Counsel ("OCC") asserts that the Public Utilities Commission of Ohio's ("PUCO's") order following its hearing on remand is unlawful and unreasonable due to the commission's alleged (1) failure to prohibit unreasonable and unlawful price elements from side agreements, (2) failure to base its order on adequate evidence in the record in violation of R.C. 4903.09, and (3) erroneous designation of portions of the record as trade secrets.

{¶ 2} On January 2, 2009, the commission moved the court to dismiss this case on the grounds that (1) the rate stabilization plan ("RSP") established by the appealed orders has lapsed by its own terms, rendering the appeal of the RSP moot, and (2) the commission's determination regarding the confidentiality of certain information in the record below has been modified by subsequent orders to redact and release information rendering moot the confidentiality aspect of the order appealed. Because our review of the record and relevant statutes reveals that the rates charged through the RSP under consideration in this matter expired on December 31, 2008, and because even if this court were to reject the rates charged under the RSP, there would be no effective remedy available to OCC, we conclude that OCC's appeal regarding the RSP is moot. However, because the commission's subsequent orders are not part of the record, we cannot

ascertain whether they render moot the trade secrets portion of the order appealed. Accordingly, we deny the commission's motion to dismiss with regard to the trade secrets issue and grant the motions to seal documents filed with this court that contain information regarding trade secrets.

## Background

{¶ 3} On January 10, 2003, Duke Energy Ohio, Inc. ("Duke," formerly named "CG & E") filed an application to provide a market-based standard service offer and to establish a competitive bidding process as required under R.C. 4928.14. Duke filed a supplemental application on January 26, 2004. Ultimately, the commission approved a stipulation in the case establishing a market-based standard service offer and competitive bidding process.

{¶ 4} OCC appealed the commission's approval of the stipulation to this court, and we remanded the case to the commission, instructing it to permit discovery of side agreements in order to evaluate the seriousness of the bargaining that had led to the stipulation and to justify charges instituted and changes made from its original order to its entry on rehearing. *CG & E Remand Opinion,* 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, ¶ 94.

### *Discovery and Trade Secrets*

{¶ 5} On November 29, 2006, the commission directed Duke to provide OCC with the discovery it had requested. OCC also requested the disclosure of additional agreements between Duke Energy Retail Services ("DERS"), a Duke-affiliated competitive retail electric supplier ("CRES"), and Duke's customers. The commission ordered Duke and DERS to produce the documents over their objections.

{¶ 6} On March 2, 2007, Duke, DERS, Cinergy, Kroger, and the Ohio Hospital Association[1] moved the commission for protection orders after OCC informed them of its intention to publicly release the discovery documents. On March 19, 2007, the commission conducted an evidentiary hearing and issued orders protecting the information for 18 months, on the condition that the commission could modify the order. The commission then admitted the side agreements into evidence.

{¶ 7} On July 26, 2007, the chairman of the commission received a public records request for some of the information subject to the protection orders. The attorney examiners on the case sought input from the parties regarding the

---

1. Cinergy, DERS's parent company, Kroger, and the Ohio Hospital Association intervened in the proceedings before the commission, but are not parties to this appeal.

nature of the requested information. The issue became whether the documents contained trade secrets.

{¶ 8} After conducting an in camera review of the side agreements, the commission determined that portions of those documents constituted trade secrets pursuant to R.C. 1333.61(D) and Ohio Adm.Code 4901–1–24. The commission found that certain aspects of the agreements contained independent economic value and that the parties to the agreements had consistently sought confidential treatment of the documents. Accordingly, the commission ordered Duke to work with the parties to prepare and file a redacted version of the information under its control and for all other parties to do the same.

### Rejection of the Stipulation

{¶ 9} On October 24, 2007, the commission issued its remand order. After reviewing the record, including the side agreements, the commission concluded that Duke had failed to submit sufficient evidence to support a finding that the parties had engaged in serious bargaining. Therefore, the commission determined that the stipulation was not reasonable and rejected it, thereby returning the focus of the proceeding to the consideration of Duke's rate-stabilization application. See *Consumers' Counsel v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 123, 126, 592 N.E.2d 1370.

### R.C. 4928.14 Standard Service Offer on Remand

{¶ 10} Because the commission rejected the parties' stipulation, it used Duke's application and the resulting record to establish Duke's market-based standard service offer in accordance with R.C. 4928.14. The commission's remand order streamlined the annual adjustment component charge, maintained the previous fuel and purchased power charge, and specified that those charges, as well as 100 percent of "little g," which was the generation charge prior to the unbundling of electric services, were avoidable charges for all shopping customers. The order also removed the rate-stabilization charge, maintained the cost-based system-reliability tracker as an unavoidable charge, and established the unavoidable infrastructure-maintenance fund ("IMF") at a percentage of "little g."

{¶ 11} OCC appeals the commission's remand order to this court as of right. Duke and DERS have intervened as appellees. Ohio Partners for Affordable Energy ("OPAE") filed an amicus brief in support of OCC.

### Standard of Review

{¶ 12} R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable. *Constellation NewEnergy, Inc.*

*v. Pub. Util. Comm.,* 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. This court will not reverse or modify a PUCO decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.,* 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29, quoting *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (2000), 88 Ohio St.3d 549, 555, 728 N.E.2d 371. The appellant bears the burden of demonstrating that the PUCO's decision is against the manifest weight of the evidence or is clearly unsupported by the record. Id. Furthermore, this court will not reverse a commission order absent a showing by the appellant that it has been or will be harmed or prejudiced by the order. *Myers v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 299, 302, 595 N.E.2d 873.

{¶ 13} The court has "complete and independent power of review as to all questions of law" in appeals from the commission. *Ohio Edison Co. v. Pub. Util. Comm.* (1997), 78 Ohio St.3d 466, 469, 678 N.E.2d 922. The court has explained that it may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 108, 110, 12 O.O.3d 115, 388 N.E.2d 1370.

### Allegations of Discrimination, Corporate Separation Violations, and Unlawful Discounting of Charges

{¶ 14} In its first proposition of law, OCC contends that the commission's order is unreasonable and unlawful because it improperly limits the commission's consideration of evidence contained in Duke's side agreements. Specifically, OCC asserts that the commission limited the use of the side agreements to whether the signatory parties engaged in serious bargaining when entering into the 2004 stipulation and ignored OCC's allegations of discrimination, corporate separation violations, and unlawful discounting of charges.

{¶ 15} The commission states that pursuant to this court's *CG & E Remand Opinion,* it thoroughly examined and considered the side agreements offered by OCC as evidence relevant to the issue of the integrity and openness of the parties' bargaining in reaching the stipulation. Based upon this examination, the commission asserts that it found that "the existence of side agreements, in which several of the signatory parties agreed to support the stipulation, raised serious doubts about the integrity and openness of the negotiation process related to that stipulation." Therefore, the commission rejected the stipulation. Having rejected the stipulation, the commission asserts that it proceeded with its statutory

duty to establish a market-based standard service offer supported by the record in this case. While the commission found that the side agreements might support a number of issues, those issues were not relevant to the sole task at hand— consideration of Duke's application to establish a market-based standard service offer.

{¶ 16} Duke asserts that OCC's appeal challenges the commission's interpretation and assessment of the weight of record evidence. Duke notes that while OCC obtained broad discovery, at hearing, it asked only that the commission conduct further investigation into the terms of the side agreements. Moreover, it asserts that the commission did not have to resolve OCC's allegations of wrongdoing in order to resolve the sole issue before it—Duke's rate-stabilization application.

{¶ 17} Pursuant to our remand, the side agreements were relevant to the commission's evaluation of the serious bargaining aspect of the reasonableness review for stipulations before the commission. Because the side agreements included agreements that the signatory parties would support the stipulation, they raised serious doubts about the integrity and openness of the stipulation-negotiation process. Therefore, the commission rejected the stipulation. But in the absence of the stipulation, the commission was still required to consider Duke's rate-stabilization application and set the market-based standard service offer. The side agreements are not relevant to this task.

{¶ 18} OCC may still raise additional issues arising from the side agreements, including its allegations of discrimination, inadequate corporate separation, and unlawful discounting of charges. Specifically, the OCC can use the complaint process set forth in R.C. 4928.16 or 4928.18, should any of the issues negatively affect its clients. Therefore, the commission's decision declining to address these arguments is not unlawful or unreasonable. Accordingly, we affirm the decision of the commission and hold that the commission did not unlawfully or unreasonably limit the use of new evidence discovered in the side agreements during the remand proceeding.

### Adequacy of the Commission Hearing and Record

{¶ 19} In its second proposition of law, OCC asserts that the commission's remand order is unreasonable and unlawful because the record does not support it. OCC contends that the IMF is an unauthorized and unsupported surcharge that the commission approved in violation of R.C. 4903.09. Specifically, OCC argues that the IMF charge is an improper surcharge that duplicates existing charges and is not cost-based. OPAE also argues that the IMF charge is duplicative and should be eliminated.

{¶ 20} Additionally, OCC challenges the commission's determination regarding the unavoidability of certain charges associated with Duke's provider-of-last-resort duty. OCC argues that even a small unavoidable charge can endanger the profit margins of a large percentage of competitive retailers, thereby creating a barrier to the competitive supply of generation service. It states that the record evidence of this case demonstrates that permitting customers to purchase generation services from a competitive provider without having to make redundant payments to the electric-distribution utility would provide desperately needed encouragement for the competitive marketplace.

{¶ 21} Initially, the commission countered OCC's arguments on the basis that the record supports its determinations regarding the avoidability or unavoidability of the various charges under R.C. 4928.14. However, on January 2, 2009, the commission filed a motion to dismiss in which it alleges that as of January 1, 2009, the rates charged to consumers are based on a new commission order adopted pursuant to 2008 Am.Sub.S.B. No. 221 (effective July 31, 2008). See *In re Duke Energy Ohio, Inc.*, (Dec. 17, 2008), PUCO Nos. 08–920–EL–SSO, 08–921–EL–AAM, 08–922–EL–UNC, and 08–923–EL–ATA. Therefore, the court could not remand the case in order to implement lower prospective RSP rates because that rate structure is no longer in effect. Nor could the court order a refund of excessive rates because OCC did not preserve the refund issue for appeal, and any refund order would be contrary to our precedent declining to engage in retroactive ratemaking. See *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254, 259, 2 O.O.2d 85, 141 N.E.2d 465, and *Lucas Cty. Commrs. v. Pub. Util. Comm.* (1997), 80 Ohio St.3d 344, 348, 686 N.E.2d 501.

{¶ 22} Accordingly, we grant the commission's motion to dismiss with respect to that portion of the commission's remand order establishing Duke Energy's RSP.

## Trade Secrets

{¶ 23} OCC's third proposition of law addresses the portion of the commission's remand order designating certain information contained in the side agreements as trade secrets. Although the commission addressed the merits of the proposition both in its brief and at oral argument, the commission now asserts that its subsequent orders, issued on May 28, 2008; June 4, 2008; July 31, 2008; October 1, 2008; and November 5, 2008, implementing the trade-secrets portion of the commission's remand order render review of the remand order moot. Specifically, the commission asserts that this court cannot meaningfully review the trade-secrets ruling without considering the final determination of confidentiality contained in the subsequent orders, which identify the specific information to be redacted from each document. However, permitting the commission to issue subsequent orders that supersede orders that are on appeal to this court would

circumvent this court's constitutional and statutory power to review the commission's orders. It would also run counter to this court's repeated pronouncements against piecemeal litigation. See, e.g., *Cincinnati v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 366, 368, 588 N.E.2d 775, and *Senior Citizens Coalition v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 329, 332, 533 N.E.2d 353. Furthermore, it is impossible for this court to conclusively determine whether the trade-secrets issue is moot without reviewing the commission's subsequent orders, which are not part of the record. For these reasons, we overrule the commission's motion to dismiss with respect to the trade-secrets issue and address the merits of OCC's third proposition of law.

{¶ 24} OCC contends that the commission's order is unreasonable and unlawful because it designates certain information contained in the side agreements as trade secrets without legal justification, thereby improperly shielding it from public scrutiny. OCC also contends that the commission did not follow precedent and violated R.C. 149.43 when it shielded significant portions of the side agreements from entering the public domain.

{¶ 25} OCC maintains that by purging the agreements of customer names, termination provisions, financial considerations, the price of generation specified in each contract, the volume of generation covered by each contract, and terms under which options may be exercised, the commission rendered the documents incomprehensible. It asserts that disclosure of this information would not reveal the "marketing strategies" of any CRES provider that would be helpful to competitors and claims that the only strategy that disclosure would reveal is that of the Duke-affiliated companies in reaching side agreements with a few large customers. Additionally, OCC asserts that the commission's "inevitable conclusion" that there was not serious bargaining in reaching the now rejected stipulation is proof that the documents are not normal competitive agreements, but settlement agreements subject to public inspection.

{¶ 26} On the other hand, the commission argues that it lawfully and reasonably protected the confidentiality of documents containing trade secrets in this instance. The commission received a public records request for those documents on July 26, 2007. Upon receipt of that request, the commission conducted an in camera inspection of the documents and ordered some of the information redacted as trade secrets. It contends that an in camera inspection is the best procedure to determine whether information is exempt from disclosure. The commission also notes that R.C. 4928.06(F) obligates it to protect the confidentiality of protected industry information. Balancing the public policy of providing public access to public records with its duty to protect information for the market, the commission determined that it was possible to redact the trade-secret information without rendering the documents incomprehensible. Moreover, be-

cause OCC itself had complete access to the unredacted documents and because the commission admitted them at the hearing and permitted OCC witnesses to testify regarding their content, the commission asserts that its trade-secret ruling did not prejudice OCC's appeal.

{¶ 27} Duke raises a concern about the ramifications on the competitive market if the commission is unable to protect agreements between competitive suppliers and customers. Duke argues that utility affiliates, unaffiliated competitive retail electric suppliers, and customers will avoid the competitive market if the commission is unable to keep their trade-secret information confidential. Duke asserts that such a scenario would essentially transition the industry back to regulation with no marketers and no customers seeking competitive options. R.C. 1333.61(D)(1) and (2) define "trade secret" as information that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

{¶ 28} Here, the commission found that certain aspects of the agreements have an independent economic value, as required by the first test for determining whether information is a trade secret. In particular, the commission relied upon Cinergy's evidence showing the economic significance of these contracts and OHA's representation that the material allows the contracting parties to run their businesses more economically and to compete more effectively. Ultimately, the commission found that the side agreements contained the following trade-secret information: (1) customer names, (2) account numbers, (3) customer Social Security numbers or employer identification numbers, (4) contract termination dates or other termination provisions, (5) financial consideration in each contract, (6) price of generation specified in each contract, (7) volume of generation covered by each contract, and (8) terms under which any options may be exercisable. Based on the record in this case, the commission's declaration that these categories of information have an independent economic value is reasonable.

{¶ 29} The commission's finding under the second test in R.C. 1333.61(D)(2), that the parties to the agreements consistently sought confidential treatment of the documents, is also reasonable. As the commission notes in its opinion and order, the parties filed numerous memoranda advocating confidential treatment of the documents in question and have treated the documents as proprietary, confidential business information at all junctures of the proceeding. A review of the record demonstrates that the parties sought confidential treatment at the beginning of the commission proceeding and continued to request such treatment after the attorney examiner notified the parties that the commission had received a public records request for the information. Therefore, the commission reason-

ably determined that the parties exercised reasonable efforts under the circumstances to maintain the secrecy of this information and that these categories of information constituted trade secrets.

{¶ 30} The determination that certain information constitutes a trade secret, however, is not the end of the commission's analysis. The commission must also balance that determination with its duty under Ohio Adm.Code 4901–1–24(D)(1), which requires it to redact confidential information when reasonable without rendering the remaining document incomprehensible or of little meaning. The commission conducted an in camera review of the document in question to identify and order the eligible areas of redaction. We have previously held that an in camera inspection is the "best procedure" to determine whether information is exempt from disclosure. *State ex rel. Allright Parking of Cleveland, Inc. v. Cleveland* (1992), 63 Ohio St.3d 772, 776, 591 N.E.2d 708. We conclude that the commission took the appropriate steps in this proceeding to appropriately redact the trade-secret information and make the document available to the public.

{¶ 31} Furthermore, the commission has the statutory authority to protect competitive agreements from disclosure, and as we have noted, the commission also has a duty to encourage competitive providers of electric generation. All of the parties agree that the market is weak, and anything could affect the future growth of competitive providers. Exposing a competitor's business strategies and pricing points would likely have a negative impact on that provider's viability. Absent any showing of harm from the commission's order, and recognizing the volatility and competitiveness of the electric industry, we conclude that the order to redact information is not unreasonable. Accordingly, we affirm the commission's orders regarding trade secrets.

## Motions to Seal Documents

{¶ 32} OCC, Duke, and DERS all filed motions to seal portions of their briefs and supplements in this proceeding. The requests dealt with the material that the commission determined to be trade secrets in the decision under appeal. Pursuant to S.Ct.Prac.R. XIV(1)(B), a document filed with the court shall be public unless sealed by the court or subject to a pending motion to seal. As previously discussed, we affirmed the commission's orders. Accordingly, we also grant the motions to seal portions of the pleadings.

## Conclusion

{¶ 33} The commission appropriately directed OCC to file a complaint pursuant to R.C. 4928.18 to raise ancillary issues not at issue in the commission's proceeding. The commission appropriately determined that certain information in the record constituted trade secrets and took appropriate steps to redact that

information before making the documents available to the public. Accordingly, we affirm the commission's order.

Order affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 34} Ohio is moving toward a deregulated electricity market, but isn't there yet. Most customers, therefore, don't have the option of negotiating for better electricity prices. But big customers do, and when they negotiate a better deal for themselves and stipulate to higher prices for everyone else, this court should carefully consider the circumstances before approving decisions of the Public Utilities Commission of Ohio ("PUCO"). We did just that when we initially remanded this case "[b]ecause the side agreements included agreements that the signatory parties would support the stipulation, [which] raised serious doubts about the integrity and openness of the stipulation-negotiation process." See *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 300, 2006-Ohio-5789, 856 N.E.2d 213, at ¶ 86 (the commission "must determine whether there exists sufficient evidence that the stipulation was the product of serious bargaining. Any such concessions or inducements [side agreements] apart from the terms agreed to in the stipulation might be relevant to deciding whether negotiations were fairly conducted. The existence of concessions or inducements would seem particularly relevant in the context of open settlement discussions involving multiple parties, such as those that purportedly occurred here. If there were special considerations, in the form of side agreements among the signatory parties, one or more parties may have gained an unfair advantage in the bargaining process").

{¶ 35} The problem here is that even though we rejected the stipulation and remanded the case, nothing has changed. The PUCO agreed to essentially the same deal that had been the product of the flawed stipulations. That isn't the way the process is supposed to play out. Part of the problem revolves around the PUCO and a majority of this court stamping their imprimatur on the concept that pricing and related issues, which should be public, are trade secrets. But see R.C. 4901.12 ("all proceedings of the public utilities commission and all documents and records in its possession are public records"). See also *State ex rel. Cleveland v. Pub. Util. Comm.* (1995), 73 Ohio St.3d 1207, 653 N.E.2d 389 (Douglas, J., dissenting). This policy allows public utilities to hide the lower prices they charge some users, thereby shielding themselves from public scrutiny.

This policy also contravenes the purpose of the PUCO, which is to protect the customers of public utilities. See http://www.puco.ohio.gov/PUCO/About/index.cfm (the PUCO "[r]egulates your rates for utility services where you do not have choices. Even with competition growing in the gas and electric industries, for example, the PUCO still sets the rates for delivery of those services since that part is still controlled by one company").

{¶ 36} Public utilities should not be able to hide their pricing. They are, after all, *public* utilities. Furthermore, R.C. 4905.07 requires that all "facts and information in the possession of the public utilities commission shall be public, and all reports, records, files, books, accounts, papers, and memorandums of every nature in its possession shall be open to inspection by interested parties or their attorneys." Providing a lower price to a high-volume user is a legitimate business decision; hiding that lower price is not. I dissent.

———————

Janine L. Migden–Ostrander, Consumers' Counsel, and Jeffrey L. Small and Ann M. Hotz, Assistant Consumers' Counsel, for appellant.

Richard Cordray, Attorney General, and Thomas W. McNamee and Sarah J. Parrot, Assistant Attorneys General, for appellee.

Paul A. Colbert and Rocco O. D'Ascenzo, for intervening appellee, Duke Energy of Ohio, Inc.

Michael D. Dortch, for intervening appellee, Duke Energy Retail Sales, L.L.C.

Colleen L. Mooney and David C. Rinebolt, urging reversal for amicus curiae, Ohio Partners for Affordable Energy.