**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Buckeye Energy Brokers v. Palmer Energy Co.,* Slip Opinion No. 2014-Ohio-1532.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-1532

IN RE COMPLAINT OF BUCKEYE ENERGY BROKERS, INC., APPELLANT, *v.* PALMER ENERGY COMPANY, INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Buckeye Energy Brokers v. Palmer Energy Co.,* Slip Opinion No. 2014-Ohio-1532.]**

*Public Utilities Commission—Certification for providing competitive retail electric or natural-gas services—Standing for complaint against uncertified competitor.*

(No. 2012-0668—Submitted January 7, 2014—Decided April 15, 2014.)

APPEAL from the Public Utilities Commission of Ohio,

No. 10-693-GE-CSS.

_____

**LANZINGER, J.**

SUMMARY

{¶ 1} This is an appeal of an order of the Public Utilities Commission of Ohio that determined that intervening appellee, Palmer Energy Company, an

energy-management and consulting firm, did not violate R.C. 4928.08 and 4929.20. These provisions require any entity that intends to provide competitive retail service for electricity or natural gas to obtain a certificate to operate before providing that service. R.C. 4928.08(B) (certification for competitive retail electric service) and 4929.20(A) (certification for competitive retail natural-gas service). The laws are designed to ensure that companies are credible and capable of delivering the services they offer and to protect customers and incumbent distribution utilities from default. R.C. 4928.08(B) and (C) and 4929.20(A) and (B).

**{¶ 2}** Appellant, Buckeye Energy Brokers, Inc., a certified provider of competitive retail electric service and competitive retail natural-gas service, filed a complaint and an amended complaint with the commission against Palmer, which was one of its alleged competitors. Buckeye alleged that Palmer had violated R.C. 4928.08 and 4929.20 by acting without a certificate as a broker in arranging for the supply of competitive retail electric and natural-gas services in Ohio.

**{¶ 3}** The commission held that Buckeye failed to prove its allegations and specifically found that Palmer had provided services to its clients as a consultant—not as a broker.

**{¶ 4}** Buckeye appealed to this court, raising six propositions of law. Because Buckeye has not demonstrated prejudice, as it must to obtain reversal of the order, we dismiss Buckeye's appeal without reaching the merits.

### CASE BACKGROUND

**{¶ 5}** R.C. 4928.08(B) provides: "No * * * electric services company * * * shall provide a competitive retail electric service to a consumer in this state * * * without first being certified by the public utilities commission * * *." Likewise, R.C. 4929.20(A) provides: "No * * * retail natural gas supplier shall provide a competitive retail natural gas service * * * to a consumer in this state without first

2

being certified by the public utilities commission * * *." The provisions require the entity seeking certification to demonstrate its "managerial, technical, and financial capability to provide that service" and also to provide a "financial guarantee" or "reasonable financial assurances" that are "sufficient to protect customers" and "electric distribution utilities" or "natural gas companies" from default.

{¶ 6} Buckeye alleged that Palmer held itself out and acted as a broker in arranging for the supply of competitive retail services without obtaining the required certification. Buckeye sought the following remedies from the commission: (1) rescission of Palmer's contracts to provide competitive retail electric and natural-gas services, (2) restitution to customers receiving service under those contracts, and (3) forfeiture to the state for each violation. *See* R.C. 4928.16(B) and 4929.24(B).

{¶ 7} Palmer answered the allegations, denying that it had violated R.C. 4928.08 or 4929.20. Palmer maintained that it was acting as a consultant and not as a broker that arranged for the supply of competitive services. Thus it was not required to become certified, because it was not providing competitive retail electric or natural-gas services in Ohio.

{¶ 8} While the case was pending before the commission, Palmer filed applications to become certified under R.C. 4928.08 and 4929.20, which were granted in September 2010. The commission therefore appropriately limited its review of Palmer's conduct to the period before it became certified.

{¶ 9} After an evidentiary hearing, the commission held that Buckeye had failed to prove that Palmer had arranged for the supply of competitive retail electric and natural-gas services before being certified. The commission held that Palmer had provided services to clients as a consultant—not as a broker that arranged for the supply of competitive services.

**{¶ 10}** The commission interpreted the definitions of "electric services company" in R.C. 4928.01(A)(9)[1] and "retail natural gas supplier" in R.C. 4929.01(N). They are similarly worded and provide that an entity falls under the applicable definition by being in "the business of supplying or arranging for the supply of" a competitive service. In turn, the term "broker" is included in the statutory definitions of "electric services company" and "retail natural gas supplier." R.C. 4928.01(A)(9) (defining "electric services company" to include "power broker") and 4929.01(N) (defining "retail natural gas supplier" to include "broker").

**{¶ 11}** Because no evidence was submitted that Palmer was involved in "supplying" gas or electricity, the commission focused its review on whether Palmer was engaged in the business of "arranging" for the supply of competitive retail services to consumers.

**{¶ 12}** The commission first noted that the word "arranging" is not defined in R.C. Title 49 or the Ohio Adm.Code Chapter 4901 and that neither Buckeye nor Palmer offered a specific definition. "For purposes of properly defining the term 'arrange,' " the commission recognized that it had previously determined that an entity may operate as a consultant without being certified. It then determined that "to be involved in 'arranging' for the supply of CRES [competitive retail electric service] or CRNGS [competitive retail natural-gas service], an entity must be engaged in activity that exceeds the level of involvement of a consultant." Pub. Util. Comm. No. 10-693-GE-CSS, 18 (Nov. 1, 2011). The commission did not define "consultant." Nor did it explain what activities would constitute performing as a consultant or describe the type of activities that would be deemed to go beyond consulting. Instead, the commission reviewed the evidence to determine whether Palmer acted as a consultant or if its

---

[1] The commission cited R.C. 4928.01(A)(27), which defines "retail electric service." Presumably the commission meant to refer to R.C. 4928.01(A)(9), which defines "electric services company."

actions went beyond consulting and "constitute the performance of a competitive service." *Id.*

**{¶ 13}** The commission reviewed the services that Palmer had provided to its clients, primarily certified government aggregators and local government entities seeking to operate as certified aggregators.[2] The commission found that those services provided by Palmer for government clients were performed in the capacity of a consultant. According to the commission, Palmer was not "arranging" for the supply of a competitive service under the applicable statutes when it assisted clients, because it did not engage in the "ultimate decision making process and enter[] into contractual obligations on behalf of its clients with respect to the provision of a competitive service." *Id.* at 18-19.

**{¶ 14}** Buckeye timely applied for rehearing, which was denied. Buckeye then filed this appeal challenging the commission's orders.

### STANDARD OF REVIEW

**{¶ 15}** "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision on questions of fact if the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util.*

---

[2] R.C. 4928.20(A) permits certain governmental authorities to "aggregate * * * the retail electrical loads located" within their jurisdictions and to "enter into service agreements to facilitate for those loads the sale and purchase of electricity." Such authorities are known as "governmental aggregators." R.C. 4928.01(A)(13). The goal of aggregation is to form large buying groups with leverage to negotiate lower power rates with generators that compete with the utility. Customers in aggregated communities still receive noncompetitive services, such as distribution service, from the local utility.

*Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29.  The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

{¶ 16} Although the court has "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly," *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

## DISCUSSION

{¶ 17} Buckeye's primary argument on appeal is that the commission construed the certification statutes too narrowly when it found that Palmer was not required to be certified under R.C. 4928.08(B) and 4929.20(A) because it was not engaged in the business of "arranging" for the supply of competitive services. Buckeye contends that "arranging" in R.C. 4928.01(A)(9) and 4929.01(N) means more than "engaging in the ultimate decision making process and entering into contractual obligations on behalf of its clients with respect to the provision of a competitive service."

### I. Buckeye has failed to show that the order has a prejudicial effect

{¶ 18} The commission asserts that Buckeye's appeal should be dismissed because Buckeye did not suffer any harm from the commission's order and has failed to allege or identify any evidence that it was harmed by Palmer's failure to become certified.  We agree.

{¶ 19} It is well settled that this court will not reverse an order of the commission unless the party seeking reversal shows that it has been or will be harmed or prejudiced by the order.  *Cincinnati v. Pub. Util. Comm.*, 151 Ohio St.

353, 86 N.E.2d 10 (1949), paragraph six of the syllabus; *Holladay Corp. v. Pub. Util. Comm.*, 61 Ohio St.2d 335, 402 N.E.2d 1175 (1980), syllabus; *Myers v. Pub. Util. Comm.*, 64 Ohio St.3d 299, 302, 595 N.E.2d 873 (1992); *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 121 Ohio St.3d 362, 2009-Ohio-604, 904 N.E.2d 853, ¶ 12.  In this appeal, there is nothing to show any harm or injury to Buckeye stemming from Palmer's lack of certification.  Buckeye's failure to demonstrate that it was prejudiced by the commission's order is fatal to its appeal.

## II.  Buckeye's counterarguments are not persuasive

{¶ 20} Buckeye's arguments do not have merit.

{¶ 21} First, Buckeye argues that the commission cannot make this argument for the first time in this court, citing R.C. 4903.10 and cases interpreting that provision. Although R.C. 4903.10(B) bars us from considering issues that were not raised in an application for rehearing before the commission, *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 60, the statute does not bar the commission's prejudice argument.  R.C. 4903.10 applies only to parties who "urge * * * reversal, vacation, or modification" of a commission order and states, "No cause of action arising out of any order of the commission, other than in support of the order, shall accrue in any court to any person * * * unless such person * * * has made a proper application to the commission for a rehearing."  The commission is defending the order on appeal, which is its role in every appeal from one of its orders.  *See* R.C. 4903.13 (the proceeding to obtain reversal of a commission order "shall be by notice of appeal, filed * * * against the commission"); *Consol. Rail Corp. v. Pub. Util. Comm.*, 40 Ohio St.3d 252, 254, 533 N.E.2d 317 (1988) ("In an appeal from an order of the Public Utilities Commission, the commission is 'the appellee' ").  Therefore, R.C. 4903.10(B) does not bar the commission's claim of lack of prejudice.

**{¶ 22}** Second, Buckeye argues that it need not show harm attributable to Palmer's alleged violations. Buckeye maintains that a violation of the certification statutes causes inherent harm and that the statutes themselves do not require any showing of harm or prejudice. But the prejudice requirement stems from this court's case law rather than the certification statutes. Case law is clear that an allegedly aggrieved party must show that it suffered prejudice from a commission order to warrant reversal.

**{¶ 23}** Third, Buckeye argues that it has shown a *generalized* harm based on Palmer's failure to obtain certification. According to Buckeye, the lack of certification meant that Palmer had failed to demonstrate its proficiency and financial stability, as the statutes require. But even if this were true, a showing of generalized harm does not help Buckeye, because as the party seeking reversal, Buckeye must show harm to itself. *See Ohio Edison Co. v. Pub. Util. Comm.*, 173 Ohio St. 478, 184 N.E.2d 70 (1962), paragraph ten of the syllabus; *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus; *Indus. Energy Consumers v. Pub. Util. Comm.*, 63 Ohio St.3d 551, 553, 589 N.E.2d 1289 (1992).

**{¶ 24}** Fourth, Buckeye argues that it suffered harm because it was competing against Palmer while being certified when Palmer was not. According to Buckeye, this fact put Buckeye at a competitive disadvantage. But these unsubstantiated statements are not enough to show prejudice. There is no explanation or evidence as to how Palmer's lack of certification adversely affected Buckeye competitively. Buckeye bears the "burden of demonstrating * * * that it has been or will be prejudiced by the error." *AK Steel Corp. v. Pub. Util. Comm.*, 95 Ohio St.3d 81, 88, 765 N.E.2d 862 (2002). Buckeye, however, has failed to make an argument or draw our attention to any evidence that demonstrates error, let alone prejudicial error. *See, e.g., Allnet Communications Servs., Inc. v. Pub. Util. Comm.*, 70 Ohio St.3d 202, 206, 638 N.E.2d 516 (1994)

(rejecting argument because appellant "provided no further reasoning or record citations to support" it); *Elyria Foundry Co. v. Pub. Util. Comm.*, 114 Ohio St.3d 305, 2007-Ohio-4164, 871 N.E.2d 1176, ¶ 67 (rejecting claim that, "in addition to being speculative," "is supported by no argument or evidence as to how the alleged [error] prejudices [appellant]").

### CONCLUSION

{¶ 25} This court "will not reverse an order of the commission absent a showing of prejudice by the party seeking reversal." *Myers v. Pub. Util. Comm.*, 64 Ohio St.3d at 302, 595 N.E.2d 873. Buckeye has failed to show that it suffered prejudice or harm from the commission's orders. Therefore, we dismiss this appeal.

Appeal dismissed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Day Ketterer, Ltd., Matthew Yackshaw, and John S. Kaminski, for appellant.

Michael DeWine, Attorney General, William L. Wright, Section Chief, and Devin D. Parram and Thomas W. McNamee, Assistant Attorneys General, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., M. Howard Petricoff, and Stephen M. Howard, for intervening appellee.

_____