NORMAN ET AL., APPELLANTS, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.
CINCINNATI GAS & ELECTRIC COMPANY, APPELLANT, *v.*
PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Norman v. Pub. Util. Comm. (1980),
62 Ohio St. 2d 345.]

(Nos. 79-475 and 79-486—Decided June 18, 1980.)

*Messrs. Frost & Jacobs* and *Mr. W. Joseph Dehner, Jr.,* for Norman et al., appellants in case No. 79-475 and intervening appellees in case No. 79-486.

*Mr. R. Gregory Park,* for appellant Gallagher in case No. 79-475 and intervening appellee in case No. 79-486.

*Mr. John D. Woliver,* for appellant Malott in case No. 79-475 and intervening appellee in case No. 79-486.

*Messrs. Squire, Sanders & Dempsey, Mr. Alan P. Buchmann, Mr. William J. Moran, Mr. James J. Mayer* and *Ms. Kathleen M. Brinkman,* for Cincinnati Gas & Electric Co., appellant in case No. 79-486 and intervening appellee in case No. 79-475.

*Mr. William A. Spratley,* consumers' counsel, *Mr. Richard L. Goodman, Mr. Michael D. Cotleur* and *Ms. Gretchen J. Hummel,* for intervenor-appellee Consumers' Counsel in case No. 79-486.

*Mr. William J. Brown,* attorney general, *Mr. Marvin Resnik* and *Mr. Thomas L. Mumaw,* for appellee Public Utilities Commission in both cases.

CELEBREZZE, C. J.   Although the opinion and order of the Public Utilities Commission herein is written in terms of the specific parties before the commission, we determine that it must constitute statements of rate and charge policy. The commission is not a collection agency, but rather an overseer of the rates and charges of a utility as they apply to the utility's customers in general. We interpret the commission's order to hold that in cases of residential customers and in those cases where a commercial customer can show excusable ignorance of the fact his bills are abnormally low, there shall be a one-year limitation on backbilling. In cases involving other commercial customers and where intentional tampering is evident, no such limitation is imposed.

The commission has the authority to rule on backbilling pursuant to R. C. 4905.26 and 4905.37. Under R. C. 4905.26, upon written complaint against a public utility "that any rate, fare charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law***if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen."

R. C. 4905.37 authorizes the commission to make necessary changes and prescribe them by order if it finds, after a hearing held upon a complaint under R. C. 4905.26, that the practices of the public utility are unjust or unreasonable. Pursuant to this provision, the commission imposed a one-year limitation on backbilling, thus allowing limited backbilling.

Under R. C. 4903.13 this court may reverse, vacate or modify commission orders. As this court stated in *Arcadia Tel. Co.* v. *Pub. Util. Comm.* (1979), 58 Ohio St. 2d 180, at page 183:

"The scope of review required on an appeal from the Public Utilities Commission, mandated by R. C. 4903.13, dic-

tates that an order of the commission will be overturned where, upon a consideration of the record, that particular order is either unreasonable or unlawful."

It is within these parameters that we must determine the questions before us.

## Case No. 79-475

Appellants argue that CG&E can only backbill when the procedure is specifically enumerated in its service regulations. The only specific mention of backbilling in CG&E's applicable gas and electric tariffs is in its electric service regulations, and that provision limits backbilling to a period of two months. As a consequence, appellants contend that CG&E can only backbill for electrical usage, such backbilling being limited to a two-month period.

This specific mention of backbilling states as follows:

"Company, for the mutual protection of Customer and Company, will make periodic tests of the meter or meters used in measuring the electricity furnished to Customer, and will test a meter or meters upon the written request of a customer. The meter or meters shall be tested and if found inaccurate, shall be restored to an accurate condition or a new meter or meters shall be substituted. Any meter tested and found to be registering not more than two percent (2%) either above or below normal shall be considered to be correct and accurate.

"If as a result of any test any meter is found to register in excess of two percent (2%) either above or below normal, then the registration of any electricity for the period of the preceding regular billing month and the part of the month from the last regular meter reading to the date of the test shall be corrected according to the percentage of inaccuracy so found, unless a test was made during this period, then in such case the correction shall be made to the registration of electricity for the period between these tests. Company will refund any overcharges if the meter is found to be fast and customer will pay the undercharges if the meter is found to be slow."

Contrary to appellants' contention, this provision, which limits backbilling to two months, does not apply to the case where the company discovers meter malfunctioning because of abnormally low charges, but, rather, applies only to meters

found to be malfunctioning when a periodic random test is performed. Such a limitation makes sense when a malfunction is discovered through random testing, because the utility is not able to determine when the meter began to malfunction.

On the other hand, when the meter malfunction is discovered due to abnormally low bills, the utility is able to determine that the malfunction occurred for at least the length of time during which the differential between normal and abnormal bills was apparent. Any period of slight variation which is not accounted for is held in the consumer's favor. As a consequence, where abnormally low bills are involved, a two-month limitation is not in order.

In both CG&E's electric and gas tariffs there is no specific provision regarding backbilling made necessary because of metering problems discovered by means other than random, periodic checks. The commission properly ruled such backbilling permissible.

R. C. 4909.17 states, in part, that:

"No rate, joint rate, toll, classification, charge, or rental, no change in any rate, joint rate, toll, classification, charge, or rental, and no regulation or practice affecting any rate, joint rate, toll, classification, charge, or rental of a public utility shall become effective until the public utilities commission, by order, determines it to be just and reasonable, except as provided in this section and sections 4909.18 and 4909.19 of the Revised Code.***"

In each of CG&E's applicable service regulations, which were approved by the commission, there is a provision which states that "[s]ervice is supplied under a given Rate Schedule." (Paragraph 6 of the 1976, 1974 and 1954 Electric Service Regulations; Paragraph 6 of the 1976, 1973 and 1955 Gas Service Regulations.) Each regulation also states that "upon the registration of said meter or meters all bills will be calculated." (Paragraph 19 of the 1976 and 1974 Electric Service Regulations and Paragraph 21 of the 1954 Electric Service Regulations; Paragraph 19 of the 1976 Gas Service Regulations and Paragraph 20 of the 1973 and 1955 Gas Regulations.)

There is an ambiguity present in these regulations. If billing is based on a malfunctioning meter, service is not supplied under a given rate structure.

It is neither unlawful nor unreasonable for the commission to interpret a utility's service regulations in light of the statutory scheme for regulating that utility.

R. C. 4905.32 states in relevant part:

"No public utility shall charge, demand, exact, receive, or collect a different rate, rental, toll, or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the public utilities commission which is in effect at the time."

R. C. 4905.33 provides:

"No public utility shall directly or indirectly, or by any special rate, rebate, drawback, or other device or method, charge, demand, collect, or receive from any person, firm, or corporation a greater or lesser compensation for any services rendered, or to be rendered, except as provided in Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923, and 4925 of the Revised Code, than it charges, demands, collects or receives from any other person, firm, or corporation for doing a like and contemporaneous service under substantially the same circumstances and conditions.***"

These two sections require the service regulations, as approved by the commission, to be interpreted to allow backbilling. The provision regarding billing, based on registration of the meter, must be read to presume the presence of an accurate meter.

That part of the order of the commission permitting CG&E to backbill customers is not unlawful or unreasonable and it is hereby affirmed.

## Case No. 79-486

Under R. C. 4905.37, "[w]henever the public utilities commission is of the opinion, after hearing had upon complaint***served as provided in section 4905.26 of the Revised Code, that the rules, regulations, measurements, or practices of any public utility with respect to its public service are unjust or unreasonable***the commission shall determine the regulations, practices, and service to be installed, observed, used, and rendered, and shall fix and prescribe them by order to be served on the public utility."

Based on the finding that backbilling innocent parties beyond a one-year period would be unjust and unreasonable,

the commission ordered a one-year limitation on backbilling for residential customers. The commission could, pursuant to R. C. 4905.37, order this limitation on backbilling after it had found that CG&E's service regulations permitted the practice of backbilling; however, the limitation must be reasonable under the facts before the commission.

The factors cited by the commission for this determination are the potential inaccuracy of estimates based on a 30 to 60 day period which, when used for more than a year of backbilling, become unjust for an innocent party, and the hardship involved in billing for service for over a year.

The fact that R. C. 4933.28 was enacted and has since imposed a one-year limitation on backbilling is irrelevant to the determination of whether the commission's order is unreasonable or unlawful. The General Assembly was not bound by the dictates of the statutory scheme in enacting a new statute. The legislature can alter the statutory scheme, the commission may not.

R. C. 4905.32 through 4905.35 make it clear that normally all charges for service rendered must be under the applicable rate structure. However, considerations of unfairness and unreasonableness appear to be imposed upon these sections. These considerations, though, relate to the public served by the utility, and not just to the customers being backbilled.

The commission was clearly most concerned with fault in the case at bar. It found that beneficiaries of meter strapping and commercial users had contributed to the underbilling and, as a consequence, it imposed no limitation on the backbilling of such customers. It imposed the one-year limitation on the billing of Bollman and Bradley even though their bills were not estimated, but were based on actual usage. The commission did so apparently because it determined that the utility should have discovered the underbilling within a one-year period.

In the absence of statutory authority, the Public Utilities Commission cannot limit a utility's practice of backbilling to one year based on a determination that the utility should have discovered within that period that the service was not being properly metered.

Public utilities are not like private corporations. To apportion loss as the utility commission proposed to do merely

spreads the cost of the unbilled service to all the utility's customers, rather than to the customers who actually used the service the utility provided. The parties at fault do not pay, the public does. As a consequence, it was unreasonable for the commission to consider the utility's practice in determining the fairness and reasonableness of backbilling.

Because the fault of the utility can not be considered, the innocence of the customer is only relevant in the consideration of hardship. The commission viewed payment for unbilled service beyond a year as being unfairly harsh to the customer who could not be expected to know, or who justifiably did not know, of the undercharge. While consideration of unfair hardship might be a valid factor in determining fairness of the backbilling practice, the facts before the commission can not justify imposition of the one-year limitation.

The customers who were backbilled were allowed to make their payments in installments over a time period equal to that for which the service went unmetered. They received both the unbilled service and the use of their money which they would have had to pay CG&E had their bills reflected their total actual usage. Unfair hardship would exist only if the estimates were inaccurate.

There has been no showing that the estimation process is inherently inaccurate. On the contrary, CG&E accounted for seasonal changes and variations in temperature. It reduced bills based on oral representations of changed circumstances.

As a consequence, we find unreasonable the determination of the commission that hardship and inaccuracy justify the imposition of a one-year limitation on CG&E's backbilling practices for some customers.

There being no other basis for the commission's order imposing a one-year limitation on CG&E's backbilling practices, we must reverse that part of the commission's order.

*Order affirmed in part
and reversed in part.*

HERBERT, W. BROWN, SWEENEY and HOLMES, JJ., concur.

LOCHER, J., concurs in part and dissents in part.

356

VICTOR, J., of the Ninth Appellate District, sitting for P. BROWN, J., after oral argument recused himself.

LOCHER, J., concurring in part and dissenting in part.

R. C. 4909.17 provides, in pertinent part: "No rate, joint rate, toll, classification, charge, or rental, no change in any rate, joint rate, toll, classification, charge, or rental, and no regulation or practice affecting any rate, joint rate, toll, classification, charge, or rental of a public utility shall become effective until the public utilities commission, by order, determines it to be just and reasonable * * *." Backbilling is clearly a practice affecting a charge and, as such, requires prior commission approval before the implementation of that practice by a utility company.

The majority opinion quotes paragraph 20 of Cincinnati Gas & Electric's (CG&E) service regulations, which regulation limits backbilling for electric service to a period of two months. Unfortunately, the majority finds that regulation inapplicable to this cause. Although the service regulation may be ambiguous, it should apply in this case. We have held that where the meaning of a tariff is ambiguous, it is to be construed in favor of the consumer. *Saalfield Publishing Co.* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 113. Today's decision construes the tariff in favor of the very entity that drafted and caused any ambiguity, rather than the consumer who suffers from this construction.

With regard to gas service, a CG&E tariff provides:

"Gas will be measured by a meter or meters to be installed by Company upon Customer's premises at a point most convenient for Company's service, and *upon the registration of said meter or meters all bills will be calculated.*" (Emphasis added.)

The tariff allows for billing only for gas service *actually registered* on a meter. Where no service registers on the meter, there can be no billing under the clear and unambiguous language of the company drafted tariff. Although this may seem to be a harsh view, in actuality it appropriately places the burden on the utility company to make certain that its meters are kept in working order. If they fail in this task, the utility company, not the consumer, should bear the brunt of the financial loss.

I am in complete accord with the majority decision which denies to the commission the power to limit backbilling to one year. My disagreement with the majority is in their failure to apply the company drafted tariff to the practice of backbilling. My solace is that this factual setting presents one of limited application due to the enlightened action of the General Assembly in the enactment of R. C. 4933.28.

For the foregoing reasons, I respectfully dissent in part.