[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Allied Erecting & Dismantling Co., Inc. v. Ohio Edison Co.*, Slip Opinion No. 2021-Ohio-2300.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2300

IN RE COMPLAINT OF ALLIED ERECTING & DISMANTLING COMPANY, INC., APPELLANT, *v.* OHIO EDISON COMPANY, INTERVENING APPELLEE; PUBLIC UTILITIES COMMISSION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Allied Erecting & Dismantling Co., Inc. v. Ohio Edison Co.*, Slip Opinion No. 2021-Ohio-2300.]

*Public Utilities—An appellant bears the burden of demonstrating that the Public Utilities Commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record—Orders affirmed.*

(No. 2014-0008—Submitted May 11, 2021—Decided July 8, 2021.)

APPEAL from the Public Utilities Commission of Ohio, No. 07-905-EL-CSS.

_____

FISCHER, J.

{¶ 1} Appellant, Allied Erecting & Dismantling Co., Inc. ("Allied"), appeals from orders of appellee, Public Utilities Commission, requiring Allied to pay for electricity consumed during an almost three-year period in which

intervening appellee, the Ohio Edison Company, failed to bill Allied for one of its electric meters. Ohio Edison estimated the amount owed based on Allied's historical electricity usage, and the commission found that Ohio Edison had provided sufficient evidence to support the accuracy of its estimates. On appeal, Allied primarily argues that the commission failed to enforce a provision in Ohio Edison's tariff regarding estimated billing. For the reasons explained below, we hold that Allied has failed to demonstrate reversible error. We therefore affirm the commission's orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Allied's complaint against Ohio Edison

{¶ 2} Allied is an industrial contractor with a 250-acre facility in Youngstown, Ohio. In December 2003, a motor-vehicle accident destroyed one of Allied's six electric meters at its Youngstown facility. When Ohio Edison replaced the damaged meter, it mistakenly deleted one of Allied's other, undamaged meters from Ohio Edison's internal billing system. Although the deleted meter was functional and remained physically accessible at Allied's facility, Ohio Edison did not read the meter or bill Allied for the electric usage recorded by that meter. In June 2006, Ohio Edison discovered its error, and after an internal investigation, it calculated Allied's back bill for the unbilled period—from February 2004 to January 2007—to be $94,676.58.

{¶ 3} In January 2007, Ohio Edison sent Allied the back bill. Allied was surprised by the amount due and later filed a complaint with the commission pursuant R.C. 4905.26. Allied requested (1) an explanation of the error, (2) an explanation of the back-bill calculation considering Ohio Edison's failure to read the meter for a 2.5-year period, (3) protection against an unwarranted assessment of interest and late fees, and to the extent that any amount is due, (4) an appropriate payment plan.

### B. The conflicting evidence adduced at the hearing

{¶ 4} The commission held a two-day hearing on Allied's complaint. Ohio Edison presented Lisa Nentwick, a senior account manager, to testify about how she had calculated Allied's back bill. Nentwick explained that when Ohio Edison cannot obtain an actual reading of a meter, it will estimate a customer's bill based on at least two years of the customer's historical electric usage. According to Nentwick, there are two ways to estimate usage based on historical data: (1) taking the lowest usage for each corresponding month from the previous two years or (2) calculating an average usage from the corresponding months from the two previous years.

{¶ 5} Regarding Allied's bill, Nentwick testified that actual readings were unavailable from February 2004 to June 2006 because the meter was not in Ohio Edison's billing system. Therefore, she had had to estimate usage for each of those months. To calculate the estimated usage, Nentwick used a combination of the two methods described above. For the first 12 months of the unbilled period, she used the lowest usage amount for the corresponding month from the two previously available years. For example, to calculate Allied's bill for June 2004, she examined Allied's usage in June 2002 and June 2003 and took the lower of those two numbers. For the other months, Nentwick used the average of the usage for that month from the two previously available years. After the discovery of Ohio Edison's error in June 2006, Nentwick took actual readings from the meter for June, July, and August 2006, but estimated usage for the four remaining months in 2006. Ohio Edison entered Nentwick's estimated readings and the three actual readings into its billing system, which generated Allied's back bill of $94,676.58.

{¶ 6} Allied presented Douglas Hull, who testified that Ohio Edison's estimates and calculations were unreliable and flawed. Hull, a retired Ohio Edison employee, explained that the type of meter at issue here gets reset only when actual readings are taken. Hull claimed that because Ohio Edison had not read the meter in question from February 2004 to June 2006, the meter had not been reset for 28

months. And because the meter had not been reset, Hull testified, the first reading in June 2006—which was 38 kW—must have been the single high for the previous 28 months. Therefore, according to Hull, the demand for each of the previous 28 months should have been equal to or less than 38 kW a month. Hull concluded that because Nentwick's estimates ranged from 77 kW to 100 kW a month, she had disregarded the actual reading of the meter and overstated the amount of Allied's back bill.

{¶ 7} Nentwick acknowledged that Ohio Edison's first reading after discovering its error was 38 kW and that it used that actual reading to calculate Allied's monthly charge for June 2006. But she further testified that the 38 kW reading was not a reliable number to use for any other month. According to Nentwick, the 38 kW reading was less than half of any other reading ever recorded by that meter and was likely a result of transcription error by the meter reader or the meter "turn[ing] over" or resetting during the unbilled period.

## C. The commission's order

{¶ 8} In its September 2013 opinion and order, the commission first found that Ohio Edison had violated Ohio Adm.Code 4901:1-10-05(I) by failing to obtain actual readings of all its meters at least once each calendar year. Because Ohio Edison violated this regulation, the commission ordered it to conduct an internal review of its metering operations and policies and file a report of its findings within 90 days of the commission's order.

{¶ 9} Notwithstanding Ohio Edison's violation of the administrative rule, the commission also found that (1) Ohio Edison had provided sufficient evidence supporting the accuracy of the estimates in the back bill and (2) Allied had not sustained its burden in proving that Ohio Edison's estimates were unreasonable. Accordingly, the commission ordered that Ohio Edison establish a 36-month payment plan for Allied to pay the back bill, with no interest or late fees. After the

commission denied Allied's application for rehearing, Allied appealed to this court. Ohio Edison intervened as an appellee.

### D. Allied files for bankruptcy

{¶ 10} In April 2016—one month before the scheduled oral argument in this court—Allied commenced a Chapter 11 bankruptcy case, which stayed this appeal for almost five years. *See* 145 Ohio St.3d 1465, 2016-Ohio-2911, 49 N.E.3d 1309. In March 2021, Allied notified this court that its bankruptcy case had concluded, and we lifted the stay. 162 Ohio St.3d 1405, 2021-Ohio-929, 165 N.E.3d 322. The parties waived oral argument. *Id.*

## II. STANDARD OF REVIEW

{¶ 11} "R.C. 4903.13 provides that a [commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify the commission's decision as to questions of fact when the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The "appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record." *Id.*

## III. ANALYSIS

{¶ 12} Throughout its merit brief, Allied criticizes Ohio Edison for failing to keep track of its meters and for allegedly failing to communicate with Allied about the billing error. The issue before the commission, however, was whether Ohio Edison's estimated back bill was fair and reliable. Allied, as the complainant, had the burden to present sufficient evidence supporting the allegations in its

complaint. *See Grossman v. Pub. Util. Comm.*, 5 Ohio St.2d 189, 190, 214 N.E.2d 666 (1966). The commission determined that Allied failed to carry its burden. On appeal, Allied challenges the commission's orders on two grounds. We conclude that neither justifies reversal.

A. *Proposition of Law No. 1: whether the commission failed to enforce Ohio Edison's tariff and R.C. 4905.22*

{¶ 13} In its first proposition of law, Allied asserts that the commission's order was unreasonable and unlawful because the commission failed to enforce article VII(F) of Ohio Edison's tariff and R.C. 4905.22. Article VII(F) of Ohio Edison's tariff provides:

> **Estimated Bills:** The Company attempts to read meters on a monthly basis but there are occasions when it is impractical or impossible to do so. In such instances the Company will render an estimated bill based upon past use of service and estimated customer load characteristics. Where the customer has a load meter and the actual load reading when obtained is less than the estimated load used in billing, the account will be recalculated using the actual load reading. The recalculated amount will be compared with the amount originally billed and the customer will be billed the lesser of the two amounts.

(Boldface sic.) R.C. 4905.22 provides that all charges for utility service "shall be just, reasonable, and not more than the charges allowed by law or order of the public utilities commission."

{¶ 14} Allied's argument focuses on the last two sentences of the tariff provision, which require that when a customer's actual load meter reading is less than an estimated load used for billing, Ohio Edison must recalculate the account

6

using the actual reading. Allied claims that Ohio Edison "disregarded" actual readings that were less than the estimates Ohio Edison used to calculate the back bill and therefore violated this tariff provision.

{¶ 15} Specifically, Allied argues that Hull testified that the actual reading of 38 kW for June 2006 means that 38 kW was the single high demand for the preceding 28 months during which Ohio Edison had failed to read the meter. Thus, according to Allied, Ohio Edison should have used 38 kW as the actual load reading for each month during that unbilled period and Ohio Edison's failure to do so violated article VII(F). Allied also asserts that it is irrelevant whether the actual reading of 38 kW was accurate, because the tariff requires only that Ohio Edison charge a customer an actual reading when it is less than the estimate. And the commission's failure to enforce Ohio Edison's tariff, Allied argues, resulted in unjust and unreasonable charges in violation of R.C. 4905.22.

{¶ 16} For the following reasons, we hold that Allied has not carried its burden of demonstrating error. First, Allied's insistence that Ohio Edison "disregarded" the "actual readings" for the unbilled period—and therefore violated its tariff—is factually inaccurate. No one from Ohio Edison read the meter in question between February 2004 and June 19, 2006. Allied acknowledges this fact in its brief when it states that "[t]he truth is that the actual load for the subject period of time will never be known." Yet Allied also insists that the actual reading for February 2004 to June 2006 was "equal to or less than 38.0 kW" and that "Ohio Edison's disregard of the actual load reading of 38 kW is * * * legally improper." Allied is free to develop theories regarding how Ohio Edison should have calculated the back bill, but it cannot distort the record to prove a tariff violation. Allied has failed to explain why article VII(F) required Ohio Edison to extend an actual read from a single month—June 2006—to 28 other months when there were no readings taken in those months.

{¶ 17} Second, the record supports the commission's determination. During the proceedings below, the parties presented alternative ways to calculate Allied's back bill. Ohio Edison used a combination of estimates and actual readings from the unbilled period. Nentwick—who had been calculating back bills for 18 years—testified that using historical data to estimate a customer's consumption during an unbilled period is reasonable because a customer's past usage is the most accurate way to determine what the customer's consumption was during the period for which meter readings are not available. Nentwick also testified that because Ohio Edison considered historical usage from corresponding months, her estimates accounted for any variations due to seasonal weather patterns or similar factors.

{¶ 18} In contrast, Allied set forth Hull's theory that Ohio Edison should have used the 38 kW reading from June 2006 for each of the 28 previous months. In response to Hull's theory, Nentwick pointed out that the 38 kW reading was approximately half of any other reading ever recorded by that meter. Indeed, the lowest reading from 2001 to 2003 was 77 kW, and the actual readings after June 2006 were 78 kW in July and 84 kW in August. Thus, Nentwick concluded that it would have been unreasonable to assume that Allied's electricity usage dramatically decreased for the 28-month period in which Ohio Edison failed to read the meter, but then somehow doubled when Ohio Edison began reading the meter again.

{¶ 19} Based on the competing evidence, the commission found that Hull's lack of experience with estimating bills undercut his credibility, that the 38 kW reading was an "outlier," and that Ohio Edison "provided sufficient evidence to support the accuracy of the bill estimates." On appeal, Allied asks us to reweigh the evidence and substitute our judgment for that of the commission. Allied, however, has not shown that the commission's finding was against the weight of the evidence, and it is well settled that "this court will not second-guess the commission on questions of fact absent such a showing." *Ohio Consumers'*

8

*Counsel v. Pub. Util. Comm.*, 114 Ohio St.3d 340, 2007-Ohio-4276, 872 N.E.2d 269, ¶ 29. Because Allied has not established that Ohio Edison violated article VII(F), it has also failed to establish the back-bill charges were unjust or unreasonable under R.C. 4905.22.

{¶ 20} Within this proposition of law, Allied also argues that Ohio Edison violated its "internal procedures" and "guidelines for rebilling," which required Ohio Edison to, among other things, limit a customer's rebill to one year's worth of charges. Allied, however, failed to preserve any argument regarding Ohio Edison's internal rebilling procedures. Neither Allied's application for rehearing nor its notice of appeal mention an alleged violation of Ohio Edison's guidelines or internal procedures. "[T]he failure to raise the argument at rehearing and in its notice of appeal precludes this court from considering the argument." *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 17.

B. *Proposition of Law No. 2: whether article VII(F) of Ohio Edison's tariff provided a legal basis for using estimates to generate the back bill.*

{¶ 21} In its second proposition of law, Allied focuses on the first two sentences of article VII(F) of Ohio Edison's tariff, which provide:

> **Estimated Bills:** The Company attempts to read meters on a monthly basis but there are occasions when it is impractical or impossible to do so. In such instances the Company will render an estimated bill based upon past use of service and estimated customer load characteristics.

(Boldface sic.) Allied argues that article VII(F) authorizes Ohio Edison to use estimated billing *only* when obtaining actual readings is "impractical or impossible." Allied argues that under the facts here, Ohio Edison failed to read the

meter because of its own malfeasance—not because of any impracticality or impossibility. Allied interprets the "impractical or impossible" language as covering situations in which a meter was physically inaccessible, such as due to extreme weather conditions. Thus, Allied argues that article VII(F) did not give Ohio Edison "a legal basis" to use estimated billing in this case.

{¶ 22} Allied has again failed to carry its burden of demonstrating error. As a preliminary matter, Allied did not identify where the commission allegedly concluded that article VII(F) provided the "legal basis" for using estimates to generate Ohio Edison's back bill. The commission merely concluded that Ohio Edison did not violate the tariff provision. Allied's second proposition of law appears to be in response to one of Ohio Edison's arguments to the commission that the commission did not expressly rely upon in the orders on appeal.

{¶ 23} Regardless, Allied has not proved that article VII(F) prohibited Ohio Edison from using estimates to calculate a back bill necessitated by the utility's billing error. We have previously held that back billing is permissible when a utility undercharges a customer due to a meter malfunction. *See Norman v. Pub. Util. Comm.*, 62 Ohio St.2d 345, 353, 406 N.E.2d 492 (1980) (noting that the statutes prohibiting a utility from charging a customer a different rate than that in the utility's rate schedule require that the utility's tariff be interpreted to allow back billing). And although R.C. 4933.28 now limits back billing of residential customers to one year, the legislature has not placed a similar limitation on back billing for nonresidential customers. *See id.* at 349, 354.

{¶ 24} Article VII(F) merely provides that Ohio Edison will "attempt" to read meters monthly but on "occasions when it is impractical or impossible to do so," it will "render an estimated bill" based on historical use. This provision does not limit or prohibit Ohio Edison's ability to estimate a back bill for undercharged electric service. If Allied's interpretation of Ohio Edison's tariff were correct, then

Ohio Edison could estimate a customer's back bill *only* when it failed to read a meter that was physically inaccessible due to extreme weather or similar scenarios.

{¶ 25} Alternatively, if article VII(F) were applicable, because Ohio Edison had inadvertently deleted the meter from its billing system, it would have been impractical or impossible for the utility to obtain monthly readings during the unbilled period. Therefore, Ohio Edison's use of estimated billing was not inconsistent with the tariff provision.

## IV. CONCLUSION

{¶ 26} For the reasons explained above, we hold that Allied has not demonstrated that the commission erred in deciding the complaint in Ohio Edison's favor. Ohio Edison back billed Allied using a combination of actual readings and estimates based on historical usage, which accounted for seasonal changes. The commission found that Ohio Edison's back bill was reasonable and supported by reliable evidence, and the commission ordered that Ohio Edison establish a 36-month repayment plan, with no interest or late fees. Allied has not demonstrated that the commission's decision was unreasonable or that it violated any provision in Ohio Edison's tariff. We therefore affirm the commission's orders.

Orders affirmed.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

––––––––––––––––

Eckert, Seamans, Cherin & Mellott, L.L.C., and Christopher R. Opalinski, for appellant.

Dave Yost, Attorney General, John H. Jones, Section Chief, and Steven L. Beeler, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.

FirstEnergy Service Company, Carrie M. Dunn, and Scott Casto, for intervening appellee, Ohio Edison Company.

_____