[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.*, Slip Opinion No. 2025-Ohio-3034.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-3034

IN RE APPLICATION OF OHIO POWER COMPANY FOR AUTHORITY TO ESTABLISH A STANDARD SERVICE OFFER PURSUANT TO R.C. 4928.143, IN THE FORM OF AN ELECTRIC SECURITY PLAN; ONE POWER COMPANY, APPELLANT; PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE; OHIO POWER COMPANY, INTERVENING APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.*, Slip Opinion No. 2025-Ohio-3034.]

*Public Utilities—Rate design of basic-transmission-cost rider—R.C. 4928.02— R.C. 4928.05—R.C. 4928.143—Adm.Code 4901:1-36-04(B)—In approving continuation of nonbypassable rate design for electric-utility-service provider's basic-transmission-cost rider in provider's application for approval of fifth electric-security plan, Public Utilities Commission of Ohio complied with statutory requirements in R.C. 4928.05, regulatory requirements in Adm.Code 4901:1-36-04(B), and state electric policy in*

*R.C.4928.02 and maintained consistency with its past practice—Orders affirmed.*

(No. 2024-1142—Submitted June 24, 2025—Decided August 27, 2025.)

APPEAL from the Public Utilities Commission, Nos. 23-23-EL-SSO and 23-24-EL-AAM.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, BRUNNER, PATTON, HAWKINS, and SHANAHAN, JJ., joined. ROBERT J. PATTON, J., of the Eleventh District Court of Appeals, sitting for DETERS, J.

**KENNEDY, C.J.**

{¶ 1} Appellant, One Power Company, appeals the orders of appellee, the Public Utilities Commission of Ohio, authorizing intervening appellee, Ohio Power Company ("AEP Ohio"), to implement its fifth electric-security plan. One Power appeals on two grounds. First, One Power asserts that the commission erred in denying its motion to establish a reasonable protective agreement. According to One Power, the commission's denial of its motion disadvantaged it in litigation by blocking one of its in-house employees from reviewing the full range of discovery that AEP Ohio produced. Second, One Power asserts that the commission erred by authorizing AEP Ohio to continue the basic-transmission-cost rider as nonbypassable. In One Power's view, the commission should have made the rider bypassable, which would have allowed customers who shop for electric-generation service from competitive retail-electric-service providers to avoid the charge. We affirm.

## I. BACKGROUND

{¶ 2} Electric-distribution utilities such as AEP Ohio must provide consumers within their certified territory "a standard service offer of all competitive retail electric services necessary to maintain essential electric service to consumers,

including a firm supply of electric generation service." R.C. 4928.141(A). A utility can meet the standard-service-offer requirement through a commission-approved electric-security plan. *See In re Application of Ohio Power Co.*, 2020-Ohio-143, ¶ 4, citing R.C. 4928.143. This case involves two issues arising out of the commission's opinion and order authorizing AEP Ohio to implement its fifth electric-security plan and its entry denying One Power's application for rehearing.

*A. The proposed protective agreement*

**{¶ 3}** In January 2023, AEP Ohio filed with the commission an application seeking approval of its fifth electric-security plan. One Power intervened and submitted written discovery to AEP Ohio. AEP Ohio interpreted some of One Power's discovery requests as requiring the disclosure of confidential information, so AEP Ohio advised One Power that "confidential responses [would] be provided only after execution of an appropriate protective agreement." One Power responded that it was amenable to such an agreement.

**{¶ 4}** AEP Ohio's proposed protective agreement prescribed a procedure governing the sharing of "protected materials," which it defined as materials that it customarily treated as "sensitive or proprietary, which are not available to the public, and which, if disclosed freely, would subject [it] to risk of competitive disadvantage or other business injury." AEP Ohio classified the protected materials as "confidential," "competitively-sensitive confidential," or "restricted access confidential." (Capitalization deleted.)

**{¶ 5}** To gain access to competitively-sensitive confidential materials, a person would have had to sign a nondisclosure certificate and be either (1) legal counsel who made an appearance on behalf of One Power in the commission proceedings, (2) a nonemployee witness or support staff, or (3) an employee witness or support staff who was not engaged in competitive pricing, sales, or marketing activities and was "evaluating and/or testifying to matters" in support of One Power's interests.

{¶ 6} As for restricted-access confidential materials, AEP Ohio characterized them as materials that "are highly sensitive and could cause significant damage to [AEP Ohio] or other parties if made available to individuals that have influence or knowledge about the [competitive-retail-electric-service]-related business activities of [One Power]." (Underlining deleted.) To gain access to these materials, a person would have had to sign a nondisclosure certificate and be either One Power's outside counsel (including the counsel's support staff) or a One Power witness who was not also a One Power employee.

{¶ 7} One Power objected to the proposed protective agreement and could not reach a resolution with AEP Ohio, so One Power filed a motion to establish a reasonable protective agreement. It argued that the proposed protective agreement was unreasonable for three reasons: First, One Power contended that the agreement barred its chief executive officer and expert witness, Jereme Kent, from accessing the full range of discovery because he is a One Power employee. Second, it argued that the competitive-retail-electric-service-related restrictions were overly broad. And third, it claimed that aspects of the agreement would grant AEP Ohio unilateral control in deciding who could access the discovery.

{¶ 8} The commission's attorney examiner issued an entry denying One Power's motion, concluding that the proposed protective agreement "impose[d] reasonable limits on competitor employee-witnesses viewing highly sensitive and confidential data" and allowed for adequate dispute resolution. 2023 Ohio PUC LEXIS 809, *10-11 (Aug. 16, 2023). One Power filed an interlocutory appeal under Adm.Code 4901-1-15, seeking the commission's review of the attorney examiner's entry. The attorney examiner denied One Power's request for commission review, finding that One Power's arguments in support of the interlocutory appeal did "not fall under any of the enumerated categories of Ohio Adm.Code 4901-1-15(A) which entitle a party to an immediate interlocutory appeal as of right." 2023 Ohio PUC LEXIS 919, *17 (Sept. 18, 2023).

{¶ 9} The matter proceeded to an evidentiary hearing before the commission. Although One Power had prefiled Kent's testimony with the commission in advance of the hearing, One Power does not dispute that the testimony was not in evidence and that Kent did not testify. In its posthearing brief, One Power renewed its arguments concerning the proposed protective agreement. The commission issued an opinion and order affirming the attorney examiner's prior rulings on that issue. *See* 2024 Ohio PUC LEXIS 427, *270 (Apr. 3, 2024). And it denied One Power's rehearing application, again finding no merit to One Power's challenge to the proposed protective agreement. *See* 2024 Ohio PUC LEXIS 725, *1, 23, 35-36 (June 12, 2024).

### B. The nonbypassable basic-transmission-cost rider

{¶ 10} The nonbypassable basic-transmission-cost rider originated in the commission's proceeding approving AEP Ohio's third electric-security plan. *See In re Application of Ohio Power Co.*, PUCO Nos. 12-2385-EL-SSO and 13-2386-EL-AAM, 2015 Ohio PUC LEXIS 161, *174-183 (Feb. 25, 2015) ("*Third Electric Security Plan*"). In that proceeding, AEP Ohio sought to eliminate its bypassable transmission-cost-recovery rider "and establish a non-bypassable basic transmission cost rider (BTCR) through which [it] would recover non-market based transmission charges from all of its customers, both shopping and non-shopping." *Id.* at *174.

{¶ 11} In its third electric security plan, the commission authorized AEP Ohio to implement the nonbypassable basic-transmission-cost rider. *See Third Electric Security Plan* at *180. The commission reevaluated the nonbypassable rider in a subsequent proceeding but did not alter the rider's nonbypassable status. *See In re Application of Ohio Power Co.*, PUCO Nos. 16-1852-EL-SSO and 16-1853-EL-AAM, 2018 Ohio PUC LEXIS 442, *57-58 (Apr. 25, 2018) ("Fourth Electric Security Plan").

**{¶ 12}** When AEP Ohio filed its fifth electric-security-plan application—at issue in this case—it requested commission approval to continue the basic-transmission-cost rider as nonbypassable. AEP and several other parties filed a stipulation, requesting the commission's approval of the application subject to certain modifications. The commission modified and approved the stipulation in its opinion and order and rejected One Power's argument that the rider should be bypassable. 2024 Ohio PUC LEXIS 427 at *236, 270. The commission explained that modifying the rider from nonbypassable to bypassable would be a "major" rate-design change, *id.* at *229, and it "decline[d] to order such a drastic change in the structure of the rider without having the ramifications from such a decision . . . fully investigated and supported by adequate analysis or studies," *id.* at *238. One Power reiterated its arguments concerning the rider in its rehearing application, which the commission denied. 2024 Ohio PUC LEXIS 725 at *1, 23, 35-36.

*C. This appeal*

**{¶ 13}** One Power filed this appeal as of right, challenging the commission's approval of the proposed protective agreement and its continuation of the nonbypassable rider. This court granted AEP Ohio's motion to intervene as an appellee. 2024-Ohio-4500.

## II. ANALYSIS

**{¶ 14}** "R.C. 4903.13 provides that a [commission] order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 2004-Ohio-6767, ¶ 50. This court has "complete and independent power of review as to all questions of law." *Canton Storage & Transfer Co. v. Pub. Util. Comm.*, 1995-Ohio-282, ¶ 16. But we do not reweigh the evidence or second-guess the commission on questions of fact. *In re Complaints of Lycourt-Donovan v. Columbia Gas of Ohio, Inc.*, 2017-Ohio-7566, ¶ 35.

*A. Whether the commission erred in approving AEP Ohio's proposed protective agreement*

{¶ 15} In its first proposition of law, One Power argues that the commission erred by approving AEP Ohio's proposed protective agreement. One Power claims that the agreement harmed its ability to advance its interests during the commission proceedings because it precluded Kent, One Power's chief executive officer and in-house expert witness, from gaining complete access to discovery. One Power maintains that because Kent had limited access to discovery, he could not be fully apprised of the facts, meaning that the commission deprived it of due process. For their part, the commission and AEP Ohio each contend that One Power has failed to show that the proposed protective agreement harmed it. We agree with the commission and AEP Ohio.

{¶ 16} "It is well settled that this court will not reverse an order of the commission unless the party seeking reversal shows that it has been harmed or prejudiced by the order." *In re Ohio Power Co.*, 2018-Ohio-4697, ¶ 9. A party seeking reversal of a commission order cannot meet its burden of establishing prejudicial error without furnishing an argument or citing evidence showing that it has suffered a particularized harm. *See In re Complaint of Buckeye Energy Brokers, Inc. v. Palmer Energy Co.*, 2014-Ohio-1532, ¶ 23-24. And a party has not shown that it has suffered such harm from an adverse discovery ruling when it does no more than speculate about how requested discovery would have benefited it. *See generally Elyria Foundry Co. v. Pub. Util. Comm.*, 2007-Ohio-4164, ¶ 31-35.

{¶ 17} One Power has not explained how the commission's denial of its motion to establish a reasonable protective agreement caused it a particularized harm. Although One Power states that Kent's inability to access the full range of discovery harmed it by preventing it from assessing relevant evidence that would allow it to present its case and rebut or cross-examine AEP Ohio's evidence and witnesses at the commission hearing, One Power does not specify what it needed

from AEP Ohio in discovery to facilitate the presentation of its case before the commission. One Power does not even argue that it needed discretionary information from AEP Ohio concerning the nonbypassable basic-transmission-cost rider. And One Power's evidence has not established that it could have advanced its interests in the commission proceedings only by receiving complete discovery from AEP Ohio and sharing it with its in-house expert witness, Kent, as opposed to sharing it with an outside expert.

{¶ 18} One Power rejoins with a quote from *U.S. Auto Parts Network, Inc. v. Parts Geek, L.L.C.*: "[I]t is difficult to identify the parameters of prejudice if one does not know what has not been produced," 2010 WL 11597461, *4 (C.D.Cal. May 18, 2010). But that isolated quote does not override this court's repeated insistence that parties challenging a commission order must show particularized harm to secure reversal. *See, e.g.*, *In re Complaint of Buckeye Energy Brokers, Inc.*, 2014-Ohio-1532, at ¶ 23-24. One Power surely knows what its interests are and what information it needed from AEP Ohio to protect those interests. Yet, One Power offers only generalized claims of harm that speculate about how it would have benefited from having the opportunity to share all of the discovery with Kent. One Power's claim falls short of the standard articulated by this court for establishing particularized harm. *See id.*

{¶ 19} We reject One Power's first proposition of law because it has failed to show prejudicial error.

*B. Whether the commission erred in declining to modify the rate design of the basic-transmission-cost rider to make it bypassable*

{¶ 20} In its next proposition of law, One Power argues that the commission erred in authorizing AEP Ohio to continue the basic-transmission-cost rider as nonbypassable. In One Power's view, by authorizing the nonbypassable rider, the commission exceeded its statutory authority, misread its own rules, departed from the State's electric policies, and went astray of its own precedent. We disagree.

8

### *1. Statutory authority*

{¶ 21} The commission justified its authorization of the nonbypassable basic-transmission-cost rider using R.C. 4928.05(A)(2), which vests the commission with "the authority to provide for the recovery, through a reconcilable rider on an electric distribution utility's distribution rates, of all transmission and transmission-related costs." One Power challenges the commission's reliance on R.C. 4928.05 on the ground that AEP Ohio did not rely on that statute in its application to implement a fifth electric-security plan. According to One Power, for the commission to authorize a rider under R.C. 4928.05, AEP Ohio would first have to file an application seeking the commission's approval to continue the rider under that statute. But One Power does not cite any authority that requires an electric-distribution utility to cite a statute in its electric-security-plan application before the commission can rely on that statute in its orders related to that application. And nothing in R.C. 4928.05 refers to an application procedure or prescribes that filing an application is a prerequisite to the commission's approval of a transmission rider. One Power asks this court to insert words into R.C. 4928.05 that the legislature did not prescribe, which we will not do. *See In re Application of E. Ohio Gas Co.*, 2023-Ohio-3289, ¶ 13.

{¶ 22} To be sure, R.C. 4928.05 does not specify whether a transmission rider should be imposed on a bypassable or nonbypassable basis. Because the statute does not specifically answer the rate-design question, this court must consider whether the commission abused its "broad discretion," *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 2010-Ohio-134, ¶ 20, by approving a nonbypassable rider.

{¶ 23} Here, the commission observed that "whether the [basic-transmission-cost rider] should be bypassable or nonbypassable is a complex rate design issue involving a multitude of considerations that have not been fully investigated." 2024 Ohio PUC LEXIS 427 at *237-238. The commission's

observation comes from the concerns outlined in the hearing testimony of Lisa Kelso, AEP Ohio's vice president of regulatory matters and finance. As she explained, a switch from a nonbypassable to bypassable rider could have unknown effects on a customer's bill, add complexity to a customer's process in deciding whether to shop for electric-generation service, and potentially impact a FERC-approved transmission agreement to which AEP Ohio's affiliates are subject. In view of these factors, we conclude that the commission did not abuse its discretion in declining to make the basic-transmission-cost rider bypassable.

{¶ 24} One Power argues that the commission should have analyzed the rider only under R.C. 4928.143(A) and (B) because that is the statute that AEP Ohio relied on in its application. One Power claims that had the commission not relied on R.C. 4928.05, it would have had to make the rider bypassable, because R.C. 4928.143 allows only bypassable transmission riders.

{¶ 25} However, because One Power did not raise that argument in its rehearing application, we do not have jurisdiction to consider it. Ohio law provides that "[n]o cause of action arising out of any order of the commission, other than in support of the order, shall accrue in any court to any person, firm, or corporation unless such person, firm, or corporation has made a proper application to the commission for a rehearing." R.C. 4903.10. The application must "set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful." *Id.* "It is well settled that setting forth specific grounds in an application for rehearing is a jurisdictional prerequisite for our review." *In re Application of Ohio Power Co.*, 2024-Ohio-2890, ¶ 39. And the court strictly construes R.C. 4903.10's specificity test. *Id.*

{¶ 26} In its rehearing application filed with the commission, One Power did not advance the argument pertaining to R.C. 4928.143 that it advances here. Accordingly, we lack jurisdiction to address the argument in this appeal.

{¶ 27} In sum, the commission did not err in approving the nonbypassable basic-cost-transmission rider under R.C. 4928.05, and we lack jurisdiction to consider One Power's argument pertaining to the commission's application of R.C. 4928.143.

## 2. Regulatory authority

{¶ 28} One Power next claims that the commission's approval of the nonbypassable basic-transmission-cost rider ran afoul of Adm.Code 4901:1-36-04(B), which provides that a "transmission cost recovery rider shall be avoidable by all customers who choose alternative generation suppliers and the electric utility no longer bears the responsibility of providing generation and transmission service to the customers."

{¶ 29} One Power's argument that the commission violated this rule is conclusory, consisting of little more than a quote from the rule and a claim that the commission did the opposite of what the rule requires, which "do[es] not demonstrate error," *In re Complaint of Toliver v. Vectren Energy Delivery of Ohio, Inc.*, 2015-Ohio-5055, ¶ 30. That alone is enough to reject One Power's argument. *See id.* Beyond that, the commission reasoned that its approval of the nonbypassable basic-transmission-cost rider does not conflict with Adm.Code 4901:1-36-04(B) because AEP Ohio "continues to be responsible for providing non-market transmission service to both shopping and non-shopping customers." 2024 Ohio PUC LEXIS 427 at *237. The commission's reasoning is consistent with the rule because if the electric-distribution utility bears responsibility for providing transmission services to shopping customers, as here, then those customers cannot avoid the charge.

{¶ 30} One Power counters with a factual claim: it asserts that some competitive retail-electric-service providers have the authority to procure transmission services for their customers. But the only support One Power provides for this claim is a citation to another party's brief that was filed with the commission

in this case. And a brief is not evidence. *See State ex rel. Shubert v. Breaux*, 2024-Ohio-2491, ¶ 24. Moreover, as the commission pointed out in its entry denying One Power's rehearing application, One Power conceded in its rehearing application that AEP Ohio *does* provide transmission services. 2024 Ohio PUC LEXIS 725 at *33.

{¶ 31} Accordingly, the commission did not violate Adm.Code 4901:1-36-04(B) in approving the nonbypassable basic-transmission-cost rider.

### 3. Ohio's electric policies

{¶ 32} One Power claims that in approving the nonbypassable basic-transmission-cost rider, the commission veered from several of Ohio's electric policies embodied in R.C. 4928.02, running afoul of the following statutory provisions:

- "(A) Ensur[ing] the availability to consumers of . . . reasonably priced retail electric service;"

- "(C) . . . encouraging the development of distributed and small generation facilities;"

- "(D) Encourag[ing] innovation and market access for cost-effective supply- and demand-side retail electric service including, but not limited to, demand-side management . . . and implementation of advanced metering infrastructure;"

- "(E) Encourag[ing] cost-effective and efficient access to information regarding the operation of the transmission . . . systems of electric utilities in order to promote . . . effective customer choice of retail electric service . . . ;"

- "(I) Ensur[ing] retail electric service consumers protection against unreasonable sales practices, market deficiencies, and market power;" and

- "(K) Encourag[ing] implementation of distributed generation across customer classes . . . ."

{¶ 33} One Power overlooks that R.C. 4928.02 does not impose strict requirements on the commission. *See In re Application of Columbus S. Power Co.*, 2011-Ohio-1788, ¶ 62. Rather, it "simply expresses state policy," and "such policy statements are 'guideline[s] for the commission to weigh.'" (Bracketed text in original.) *Id.*, quoting *Ohio Consumers' Counsel*, 2010-Ohio-134, at ¶ 39. Here, the commission weighed the policy considerations around the nonbypassable basic-transmission-cost rider, which alone is grounds for rejecting One Power's argument, *see Columbus S. Power Co.* at ¶ 62.

{¶ 34} One Power has not shown that the commission violated state electric policy in approving the nonbypassable basic-transmission-cost rider.

### 4. Commission practice

{¶ 35} Finally, One Power argues that to maintain consistency with its past practice, the commission should have made the rider bypassable. One Power refers to the commission's past practice of allowing AEP Ohio to shift its bypassable transmission-cost-recovery rider—the predecessor to the current rider—to be a nonbypassable rider, even though that shift was a "significant" one. *See Third Electric Security Plan*, 2015 Ohio PUC LEXIS 161, at *174-183.

{¶ 36} This court has directed the commission to "'respect its own precedents in its decisions to assure the predictability which is essential in all areas of the law'" but also noted that the commission may "change course" provided that it explains why it is doing so. *Columbus S. Power Co.*, 2011-Ohio-1788, at ¶ 52, quoting *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 431 (1975), *superseded by statute on other grounds as stated in Babbit v. Pub. Util. Comm.*, 59 Ohio St.2d 81, 89 (1979). The basic flaw in One Power's argument is that the rider at issue has been nonbypassable since 2015. *See Third Electric Security Plan*; *Fourth Electric Security Plan*, 2018 Ohio PUC LEXIS 442, at *57-58. So, by continuing with the same rate design in approving AEP Ohio's most

recent application (i.e., keeping the basic-transmission-cost rider nonbypassable), the commission has maintained consistency with its past practice.

### III. CONCLUSION

{¶ 37} Because One Power has failed to establish reversible error, we affirm the Public Utility Commission's orders.

Orders affirmed.

_____

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Christopher J. Hogan; and Katie Johnson Treadway, James D. Dunn, and Matthew W. Warnock, for appellant.

Dave Yost, Attorney General, John H. Jones, Section Chief, and Connor Semple, Ambrosia Wilson, and Ashley Wnek, Assistant Attorneys General, for appellee.

Steven T. Nourse and Michael J. Schuler; and Porter, Wright, Morris & Arthur, L.L.P., Eric B. Gallon, and L. Bradfield Hughes, for intervening appellee.

_____